W. C. VIALL DAIRY, INC. *vs.* PROVIDENCE JOURNAL COMPANY.

JUNE 20, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This action of trespass on the case for libel was tried to a jury in the superior court and resulted in a verdict for the plaintiff in the sum of $45,000. The defendant's motion for a new trial was denied. The case is before us on its exceptions to the denial of such motion, to rulings on evidence, and to the charge of the court.

A careful examination of the transcript convinces us that only certain exceptions to the charge need now be considered. In the circumstances a general statement of the plaintiff's claim and of the principal defenses thereto are sufficient for our purposes. It is to be clearly understood that in so doing we express no opinion, directly or indirectly, with reference to the weight of the evidence, the credibility of the witnesses, or the merit of other exceptions urged by the defendant.

The plaintiff is a milk dealer with a place of business in the town of East Providence in this state. The defendant publishes in Providence certain newspapers of general and state-wide circulation. In 1949 defendant made a survey of the quality of milk sold by twenty-three dairies in the greater Providence area. The survey included, among other

418

things, an investigation of the source of the milk used by the various dairies, the sanitary conditions under which they respectively prepared the milk for distribution to the public, and the application of different tests to samples of milk from each dairy in order to ascertain the contents and purity of the product as it reached the consumer. The results of such investigation, with ratings and comments, were published by defendant in a series of newspaper articles in September 1949. Thereafter plaintiff brought the instant case to recover damages to its business by reason of alleged libelous matter in those articles respecting the fitness for human consumption of its milk. The defendant filed various pleas to plaintiff's declaration and, in accordance with general laws 1938, chapter 520, §2, it also filed a notice of intention to prove the truth of the alleged libel. Thus the main if not controlling issue in the case was whether the publications by the defendant concerning the quality of plaintiff's milk were true.

In view of the nature of the product involved, the sources from which it came in the raw to the plaintiff, and the conditions under which it was or should have been processed in modern times for sale to the public, the defendant relied strongly upon expert testimony to establish the truth of its statements respecting the quality of plaintiff's milk. This naturally led to counter testimony of the same character in behalf of the plaintiff. The result was that about three quarters of the 2,039 pages of testimony in the transcript now before us consists of opinions from bacteriologists, biologists, dairy technicians, and other experts in the different fields of milk sanitation and public health administration.

It is a fundamental principle of law that, except as to matters of common or general knowledge, the jury must base their verdict solely upon the evidence produced at the trial. They are not warranted in departing therefrom by importing into the case the personal experiences of individual jurors. The trial justice, who is likewise limited in dealing

with the evidence, is in duty bound to instruct the jury in a manner that will direct them to obey this fundamental rule. It is certainly not within his province to employ language in the course of the trial and more particularly in the charge that, directly or by clear inference, conveys to them the impression that they may arrive at a verdict based on their respective private experiences irrespective of the evidence. Ordinarily such impropriety could well amount to prejudicial error when remarks of that character relate to material evidence concerning matters of a technical and scientific nature not of common knowledge.

The testimony of an expert witness is competent evidence and as such it should be examined and considered by the triers of facts like the testimony of any other witness. Although the opinion of an expert is not controlling on the court or jury, nevertheless it should not be arbitrarily disregarded merely because it is expert testimony or because it is at variance with the private experiences of the trial justice or of individual jurors. The charge in the instant case is objectionable in that it may have conveyed to the jury the impression that the expert testimony for both parties on the issue of the quality of plaintiff's milk was of little or no importance, and that as to such evidence the evaluation thereof by the trial justice was controlling upon them.

In connection with our consideration of the following exceptions it is advisable to recall that the defendant relied very largely upon expert testimony to maintain the defense of the truth of its publications. Exception numbered 137 relates to a remark by the trial justice during the trial and in the presence of the jury. In the course of a discussion of plaintiff's objection to a question by defendant's counsel to an expert witness the trial justice, plainly referring to the value of expert testimony to the jury, said: "They can't understand any part of this case; they will have to view it in the light of their God-given intelligence, and only to that extent."

The plaintiff contends that such remark was "innocuous" and also that the alleged exception is untenable because it was not taken to a ruling, direction, or decision of the court, as provided in G. L. 1938, chap. 542, §2. Assuming, without deciding, that the exception to the remark in question was not properly taken, we are not persuaded that it was as harmless as plaintiff argues. In our judgment it conveyed to the jury the impression that in the opinion of the trial justice expert testimony was beyond their understanding and that they could decide the important question of the quality of plaintiff's milk not on the evidence but only "in the light of their God-given intelligence." In the circumstances it is sufficient for our purposes to treat the remark merely as background to the exceptions which we are about to consider.

The defendant's exceptions numbered 168, 169 and 170 are directed to certain language of the trial justice in his instructions to the jury. A careful examination of the charge as a whole and of the subject matter of those exceptions in particular reveals a most unusual situation. Early in the charge the trial justice characterized the case as an "ethereal sort of a case" and, in effect, he further told the jury to remember that despite the advances of science in modern times they were still living in a "practical world." The substance of this language and of the remark hereinbefore mentioned reappear as a commentary in the nature of an exhortation which the trial justice gave to the jury at the very end of the charge and immediately following his instructions relating to expert testimony. In this instance we are constrained to resort to a rather lengthy quotation, as summarization will not adequately reflect the full import of the questioned language, which is as follows:

> "Try to reconcile the testimony [of expert witnesses] if you can; and if you can reconcile it, then, of course, act upon it; if you believe the opinion testimony, act upon it. You should not, however, forget your life

experience. Most of you are youngsters; I doubt if any one of you lived very long before pasteurization was brought about, but there were cows when you were kids and there were farmers when you were kids, and there were quart measures and quart cans and 10-quart cans, and horses and wagons and milkmen when you were kids. And there was bad milk and there was good milk; there was watered milk, and there was some not quite watered so much; and there was general good health. On the other hand, there was bad health, now and then. Children had colic, and children still have colic, I think. I know my kids had colic, whether caused by milk or caused by whatnot. In other words, life is a practical life, and we have to live in this world as it is and hope for improvement. But it may be that one who is not in possession of a lot of scientific opinion about certain things would be a lot happier if not a lot healthier.

And so it is for you to give proper weight, proper credence to all of the testimony in this case, whether scientific or factual, but not to forget that you're living in this world, and to come to a conclusion as to this case as right-thinking, intelligent persons, not leaning over one way or the other, but trying to see this case as it is in its true light."

The plaintiff dismisses the force of the foregoing statements in brief and general language. It argues that the quoted language was harmless because it was not in criticism solely of defendant's experts and also that the charge when read as a whole contained correct instructions with reference to expert testimony. There is no merit in that argument. We cannot be certain that such statements were not prejudicial to the defendant, as the jury might well have assumed that the trial justice had directly impugned practically the only testimony upon which defendant relied to maintain the defense of the truth. The challenged language could reasonably be understood to imply that the trial justice deemed the testimony of *all* experts in the various fields of milk sanitation as of slight, if any, probative value.

We believe that this understanding is especially reasonable when the statements in question are viewed in the light of the remarks by the trial justice heretofore mentioned. In such circumstances the jury could have been led to give little or no consideration to the expert testimony for both sides, thus resting their verdict on only a part instead of all the evidence, which is inconsistent with the right of the parties to a fair trial.

The plaintiff further argues that even if the challenged statements were improper the defendant suffered no prejudice, because elsewhere in the charge the jury had been correctly instructed with reference to the testimony of expert witnesses. We cannot adopt such a view in the unusual circumstances of this case. It is well to recall that the statements under consideration were given to the jury at the very end of the charge, thus tending to impress strongly on their minds the closing words of the trial justice. This part of the charge tended to invade the province of the jury and to affect their unbiased consideration of all the evidence in the case. At least we cannot say definitely that it did not do so. In its effect it could have nullified in the minds of the jury all proper instructions previously given as to the legal force of expert evidence, and it could have left them with the impression that, in their consideration of the evidence on a basic issue, they were required to determine that issue on a part rather than on all the evidence.

Upon careful consideration we are of the opinion that the statements of the trial justice in the charge brought in question by the three exceptions now under consideration were in the circumstances prejudicial to the defendant. Those exceptions are therefore sustained.

The defendant's exceptions numbered 168, 169 and 170 are sustained, and the case is remitted to the superior court for a new trial.

*Morris S. Waldman, Aram A. Arabian,* for plaintiff.
*Edwards & Angell, William H. Edwards, Gerald W. Harrington, Edward F. Hindle, Knight Edwards,* for defendant.