244 A.2d 254.

STATE *vs.* JOHN F. BUCKLEY.

JULY 16, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The defendant, John F. Buckley, was tried and convicted before a judge and jury in the superior court on an indictment charging an assault with intent to murder. He is here on a bill of exceptions.

The facts are, to say the least, bizarre. In their strangeness perhaps lies the reason why the jury took approximately eight hours to reach a verdict though defendant had neither taken the stand nor offered an alibi or any other evidence in his own behalf. What evidence there was came primarily from a man named Monahan — the victim — and the investigating police officers. In substance, their testimony was that on the evening of November 1, 1963 defendant, while driving Monahan to the bus depot,

stopped at his mother's home to pick up a single-shot rifle which he said he wanted to deliver to his brother. After placing the rifle, supposedly unloaded, in the rear of the car, they were proceeding toward their destination when a lighted cigarette which had been thrown out of the window blew into the rear of the automobile. Whether defendant or Monahan looked for the cigarette is not clear. In any event, during the search the rifle was accidentally fired and Monahan was wounded. Then, rather than taking the injured Monahan to a doctor for treatment, defendant drove instead to an isolated wooded area, again stopped the car, and shot the already wounded man three additional times. What then happened is not clear. In any event, the victim somehow obtained possession of the rifle, broke it on a rock, and only then, was he taken to a house where medical aid was summoned.

After his arrest, defendant told the police that he "panicked" after the first accidental shooting and that then being "* * * in fear of the police decided to drive Francis Monahan up to a secluded area to finish him off * * *." On this evidence, the jury found defendant guilty as charged.

The defendant's motion for a new trial was seasonably filed and alleged the customary grounds: that the verdict was against the law, against the evidence and against the law and the evidence and the weight thereof. On the day the motion was scheduled to be heard, defendant's counsel requested a continuance in order, so he said, to follow up on some information which had not come to his attention until that very morning. His request was granted, and thereafter a supplemental motion was filed in which the additional ground was advanced that "* * * certain facts have come to the knowledge of counsel which would alter the verdict of the jury * * *." Attached to the supplemental motion was defendant's sworn affidavit stating as the newly discovered facts the following: that a female friend of

the victim had actually committed the assault; that he did not know her name; that he had no means of personally investigating her identity because of his confinement; that although he "vaguely knew these facts" during the trial he had not presented them because he had no way of investigating them "to the fullest possible extent"; that the facts had been "further clarified" to him after the trial; and that his counsel "* * * was unaware of these facts before, during and for a long time after the trial, to wit, May 25, 1964 * * *."

Clearly that affidavit falls short of the basic essentials which will allow a new trial to be granted by reason of the discovery of new evidence. Among those essentials are the requirements that the evidence relied upon must in fact have been discovered since the trial, and that in the exercise of ordinary diligence such evidence could not have been ascertained in time to be presented at the trial. *State* v. *Sullivan*, 83 R. I. 1, 111 A.2d 838; *State* v. *DeCesare*, 64 R. I. 123, 10 A.2d 724; *State* v. *Miller*, R. I., 142 A. 662; *State* v. *D'Ottone*, R. I., 103 A. 782.

What is here claimed as newly discovered evidence falls short on both counts. That a third person, rather than defendant, committed the assault for which he was being tried was, if true, not only known to him before the trial, but was of such importance and so vital to his defense that it is difficult to understand why he waited until after the conclusion of the trial to tell his attorney what would, if believed by the jury, have been the best of all defenses — that somebody else had committed the crime for which he was being tried. His explanation of why he neglected to give his attorney this information is far from convincing. Indeed, it strains the reasonable bounds even of credulity. He says that he did not know the third-party-assailant's identity, and that his confinement at the adult correctional institutions awaiting trial made it impossible for him to in-

vestigate and thereby discover who she was. All the more reason, of course, why counsel should have been advised, because given any leads, he could, assuming there was such a person, have tracked her down.

It seems to us that even slight diligence would have dictated that any reasonable person on trial on such a serious charge as assault with intent to murder would not have allowed to go unchallenged extensive testimony identifying him as the person who four times had fired a .22 rifle at the victim if, as defendant suggests in his affidavit, he knew all the time that he was innocent and that a third person had actually fired the rifle. In our judgment, defendant did not show ordinary diligence; and his neglect in asserting until after he had been found guilty the claim that a third person, not he, was the assailant cannot be properly considered to be newly discovered evidence within the accepted definition of that term. In the circumstances, the trial justice ruled correctly in denying defendant's motion for a new trial on the ground of newly discovered evi‑ dence.

The defendant's remaining claims, only some of which are tied to exceptions, can be summarily rejected. His first claim is that incriminatory statements made during his in‑ custody interrogation should not have been admitted into evidence because he was not given the so-called *Escobedo, Miranda, Dufour* and *Mendes* advices and warnings. The short answer to this claim is that he had no such entitlement. The requirement that the advices and warnings be given is not applied retroactively, and here his interrogation by the police as well as his trial preceded the dates when it became mandatory so to advise and warn an accused. *Johnson* v. *New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed.2d 882; *State* v. *Franklin,* 103 R. I. 715, 241 A.2d 219; *State* v. *Gannites,* 101 R. I. 216, 221 A.2d 620.

A second claim is that certain unspecified exhibits should

not have been entered as full exhibits because of the absence of a proper foundation. While defendant concedes that admitting the several exhibits may not, of itself, have constituted prejudicial error, he nonetheless argues that their admission coupled with other matters, again unspecified, may have influenced the jury to return a guilty verdict. Obviously we cannot pass on unspecified exceptions to undesignated rulings which somehow in an undescribed way are related to undefined extraneous matters all of which when combined, defendant conjectures, may, by possibility, have influenced the jury to return an unfavorable verdict. Among the several reasons why that argument cannot be considered is its complete disregard for those briefing requirements that exceptions be reasonably identified by reference to the transcript and that arguments urged before us be related to specific exceptions reserved at the trial. *Cottrell* v. *Lally,* 94 R. I. 485, 182 A.2d 302; *Villa* v. *Hedge,* 96 R. I. 52, 188 A.2d 904.

A final claim is that several allegedly erroneous evidentiary rulings, each directly or impliedly conceded to be nonprejudicial, manifest such a bias and prejudice on the part of the trial justice as to have impaired the fairness and impartiality of the trial. That is a strong charge. One making it should be prepared to establish that the trial judge had personal bias and prejudice by reason of a preconceived or settled opinion of a character calculated to seriously impair his impartiality and to sway his judgment. *State* v. *Nunes,* 99 R. I. 1, 205 A.2d 24; *Kelley* v. *City Council,* 61 R. I. 472, 1 A.2d 185. Even were there a basis for such a claim in this case—and several non-prejudicial evidentiary rulings without more certainty do not suggest that there is—the customary way to have raised it was by appropriate action at the trial, such as a motion for a mistrial or for the disqualification of the justice presiding. Had such a procedure been followed, the trial justice would

then have been called upon to rule, and the defendant, if dissatisfied, could have preserved his right to review by an appropriate exception. In this case we have no motion, no ruling, and no exception, and in the circumstanes there is nothing for us to review. *State* v. *Leavitt,* 103 R. I. 273, 237 A.2d 309; *State* v. *Quattrocchi,* 103 R. I. 115, 235 A.2d 99.

Such of the defendant's exceptions as have been pressed are overruled, those neither briefed nor argued are deemed to have been waived, and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Luc R. La-Brosse,* Special Assistant Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Moses Kando,* Special Counsel to the Public Defender, for defendant.