250 A.2d 358.

STATE *vs.* LOUIS DIFRAIA.

FEBRUARY 18, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is an indictment for armed robbery to which the defendant pleaded not guilty and not guilty by reason of insanity. The case was tried to a superior court justice and a jury which returned a verdict of guilty as charged. It is before this court on the defendant's bill of exceptions, the sole exception being that taken to the trial justice's denial of the defendant's motion for a new trial.

None of the ultimate facts is disputed. They establish that in July 1949, defendant was hospitalized in the psychiatric division of the Charles V. Chapin hospital in Providence, where his condition was diagnosed as schizophrenic, catatonic paranoid type. From Chapin he was transferred to the Rhode Island state hospital for mental diseases, then to the Bedford mental hospital in Massachusetts where he remained until September 17, 1951, when he was again returned to the Rhode Island state mental hospital. On July 8, 1952, he escaped from this latter institution.

While at large as an escapee, specifically on September 30, 1952, he entered the Warren Avenue branch of the Industrial Trust company bank in East Providence, armed with a rifle, wearing a mask and carrying a paper bag. He ordered a teller to open the door to the tellers' area, presented the bag and directed her to fill it with money. In the process the rifle discharged. At this point, said teller had placed in the bag all the money at her window, but defendant stated, "I want it all." The teller thereupon, as she stated, "* * * continued to go to each teller's window until I got to the very very end and the bag was starting to tear, and the money was falling, and he told me to 'hurry up,' so I continued to walk back towards him, and when I got to the middle of the bank, I was very frightened, and he once again said, 'Hurry up,' so I got right down to where

he was, and handed him the money, and opened the door and let him out, and closed the door after he left."

It further appears that defendant departed "loping from the bank" to his car, which was parked across the street, and drove off. He was followed from the bank by another teller, who hailed an East Providence police car, and they gave chase. The defendant was eventually apprehended, after a chase through Providence ending in Pawtucket. He was thereupon committed to the adult correctional institutions and indicted by the September term of the grand jury for the counties of Providence and Bristol, remaining at the adult correctional institutions for want of bail.

On December 8, 1952, a superior court justice authorized defendant's transfer to the state mental hospital where it was determined that defendant, at that time, was not mentally competent to stand trial. However, on March 16, 1966, a superior court justice, acting pursuant to a report received from Herbert H. Meyers, M. D., clinical psychiatrist of the department of social welfare of the state of Rhode Island, conferred with defendant's counsel who agreed that defendant was ready to stand trial.

On his plea of not guilty by reason of insanity, defendant offered the testimony of Drs. Walter E. Campbell, a qualified psychiatric neurologist, and Erwin Backrass, superintendent of the Rhode Island medical center. Doctor Campbell had examined defendant four times in October, 1952, which was within one month of the robbery. In connection with these examinations, he also considered the medical reports from defendant's earlier hospitalization. In response to questions on direct examination, the doctor testified that on the basis of his examinations and an analysis of the medical reports relating to defendant's prior hospitalization, it was his opinion that on September 30, 1952, the date of the robbery, defendant was "* * * laboring under such a defect of reason that he was unable to tell the

difference between right and wrong * * * was unable to understand the nature and the quality of the act." Similarly, Dr. Backrass, gave it as his opinion that at the time of the offense, defendant did not know the nature and the quality of his act. His opinion, however, was predicated on a study of the pertinent medical records, Dr. Backrass not having personally examined defendant.

The state produced no medical experts but vigorously cross-examined Dr. Campbell. This cross-examination consisted of a series of questions designed to establish that defendant's actions of preparation, commission and flight, as testified to by the state's witnesses, were consistent with those of a person who knew the nature and quality of his acts and that what he was doing was wrong. Doctor Campbell conceded they were, but refused to change his opinion.

After the jury's verdict of guilty and within the time prescribed by law, defendant moved for a new trial. This motion was addressed to the jury verdict as it related to defendant's plea of not guilty by reason of insanity. In denying said motion, the trial justice independently reviewed the evidence and concluded that from all the evidence, including the answers given by Dr. Campbell in cross-examination, the jury was warranted in finding that defendant had not sustained his burden of affirmatively proving the plea.

Reaching this decision, the trial justice noted that the state had offered no expert medical testimony. Regarding this lack, however, he stated that the "* * * cross examination of the two medical witnesses, particularly that of Dr. Campbell, was so very skillful that it amounted to positive evidence for the state."

It is defendant's contention that this decision is erroneous for two correlated reasons. They are, first, that the trial justice failed to give to the direct testimony of Drs. Campbell and Backrass the legal significance which attaches

to uncontradicted and unimpeached expert testimony; and secondly that he erred in completely dismissing as "impeached" the testimony of defendant's expert witnesses.

We are in full accord with the proposition that uncontradicted and unimpeached expert testimony may not be arbitrarily disregarded, *W. C. Viall Dairy, Inc.* v. *Providence Journal Co.*, 79 R. I. 416, 89 A.2d 839, but we do not agree with the contention that in referring to the thrust of the cross-examination as having "impeached" the doctors' testimony given in direct examination, the trial justice failed to give any weight to the probative force of such testimony. Rather, we think it clear that he considered such testimony in light of their answers given in cross-examination and found the latter more convincing when taken in consideration with defendant's undisputed conduct in the course of the robbery. It is elementary that in evaluating the testimony of a witness, be he expert or layman, the trier of fact may look to the totality of the testimony, including cross-examination when determining the weight to be given thereto. Having thus determined the weight to be given, the factfinder must then decide the probative value of the testimony thus weighed against all other probative evidence in the case, and this rule applies with regard to the testimony of experts in a criminal case.[1]

---

[1]In *State* v. *Supers*, 77 R. I. 251, 75 A.2d 27, where the issue was the weight to be given an expert's testimony, this court refused to fault the trial justice for instructing the jury that they should give the expert's medical testimony the weight to which they found it was entitled. There we stated at 253, "The challenged instruction is in accord with settled practice.

"Speaking generally, the great weight of authority is that the opinion of an expert, whether based on personal observations as in the instant case or on a hypothetical question, is to be considered by a jury in the same manner as the testimony of any other witness. In passing on a disputed question of fact, which in the case at bar was whether defendant knew that he indecently exposed his person, it was the duty of the jury to determine that issue according to their own judgment upon all the evidence, enlightened but not controlled by the opinion of expert witnesses."

Here, the trial justice was addressing his independent judgment to all the evidence on an issue which defendant had the burden of establishing. *State* v. *Harris*, 89 R. I. 202, 152 A.2d 106. Having passed on the weight, which, in his judgment, the jury might properly have given to the testimony of the doctors, when considering it in the light of all other evidence bearing on defendant's ability to comprehend the nature and quality of his acts as the same relates to capacity to distinguish right from wrong, the trial justice concluded that the evidence did not fairly preponderate against the jury's verdict on the issue of the defendant's special plea. In such circumstances, it was his duty to let the jury's verdict stand. *State* v. *Colvin*, 82 R. I. 212, 107 A.2d 324; *State* v. *Marderosian*, 87 R. I. 165, 139 A.2d 79.

The defendant's exception is overruled and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Assistant Attorney General, *Luc R. LaBrosse*, Special Assistant Attorney General, for plaintiff.

*Anthony J. Brosco, Corinne C. Grande*, for defendant.