337 A.2d 804.

STATE *vs.* FRANK J. VERDONE.

MAY 20, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

614

Doris, J. This indictment charging Frank J. Verdone with the crime of rape was tried to a Superior Court justice sitting with a jury. After trial, the jury returned a verdict of guilty against the defendant. The trial justice denied the defendant's motion for a new trial and sentenced him to serve a term of 14 years at the Adult Correctional Institutions. The case is before us on the defendant's appeal from the judgment of conviction.

The prosecutrix was a 19-year-old mother of two children who was separated and living apart from her husband at the time of the incident. She and her children were residing with her parents in the city of Cranston. She testified that sometime around midnight on July 14, 1972, she received a telephone call from defendant wherein he stated that he wanted to come to her home to deliver a message from her husband. She agreed that she would be waiting on the porch for defendant. She further testified that when defendant arrived she entered his car at his insistence in order to obtain the message he had promised to deliver. She stated that as they were discussing her husband, defendant told her that someone had hired him to kill her.

At that point, defendant threatened to kill her and struck her in the face rendering her unconscious. When she regained consciousness the car was moving, and shortly thereafter came to a stop in a wooded area. She further testified that at the wooded area, defendant banged her head against the door of the car, that she was screaming and that defendant again threatened to kill her. She then stated that defendant held one hand on her throat, removed her slacks and undergarments, and forced her to have intercourse with him. The defendant later drove her to her home after she agreed to meet him the following evening. On her arrival at home, she immediately told her parents to call the police, who took her to St. Joseph's Hospital where she was examined by Dr. Gerald DeLuca who later testified at the trial.

The defendant testified that the prosecutrix had telephoned him, requesting him to come to her home. He drove to her home where the prosecutrix was waiting outside, and after she entered his automobile, she told him that her husband was in Westfield, New York, and that she wanted to divorce him. Verdone admitted to engaging in sexual activities with the prosecutrix which culminated in intercourse at the wooded area, but insisted that he had not used any force and that the intercourse was voluntary on the part of the prosecutrix. The defendant further testified that the prosecutrix wore dark glasses on the evening in question. Two other witnesses, Southern Giroux and Randy Giroux, testified that the prosecutrix always wore dark glasses.

The prosecutrix testified that she owned a pair of dark tinted glasses, but on July 14, 1972, she was wearing clear glasses. Recalled in rebuttal, she testified that she did not know the witnesses, Southern Giroux and Randy Giroux.

Before the jury was impanelled, defendant moved that the trial justice disqualify herself on the ground that on one occasion defendant had appeared before her on criminal charges in District Court. The defendant also alleged that while the trial justice was engaged in the private practice of law previous to her appointment as a member of the state judiciary defendant brought some papers involving a civil case to her law office and that he heard nothing further on the matter.

The defendant points out that in the District Court the trial justice stated that if she should see defendant in court again she would send him to jail. The defendant, citing these two incidents, alleges that his resulting lack of confidence regarding the trial justice is sufficient to require the trial justice to disqualify herself.

The basis for a motion seeking disqualification of a trial justice is a showing of prejudice against a defendant by the justice. A mere allegation of lack of confidence is insufficient to show bias or prejudice as we made clear in *State* v. *Buckley,* 104 R. I. 317, 244 A.2d 254 (1968).

> "That is a strong charge. One making it should be prepared to establish that the trial judge had personal bias and prejudice by reason of a preconceived or settled opinion of a character calculated to seriously impair his impartiality and to sway his judgment. *State* v. *Nunes,* 99 R. I. 1, 205 A.2d 24; *Kelley* v. *City Council,* 61 R. I. 472, 1 A.2d 185." *Id.* at 322, 244 A.2d at 257.

Here the trial justice, in denying defendant's motion, commented at length on the circumstances surrounding the District Court incident and stated that she regarded defendant only as another person appearing before her for whom she had no personal feeling whatsoever.

The defendant has failed to establish any such prejudice or bias as required by *Buckley.* The claim of defendant

that the trial justice committed error in refusing to disqualify herself is therefore without merit.

During trial, defendant offered testimony of a brother-in-law of the prosecutrix in an attempt to show that she frequently drank in Knight's Cafe, thereby refuting the testimony of the prosecutrix that she had been to the cafe only once and then for the sole purpose of going to the ladies' room. This testimony, which was excluded as irrelevant and immaterial by the trial justice, was intended to test the credibility of the prosecutrix. The defendant contends that such exclusion by the trial justice was an abuse of discretion, and that as it resulted in a serious disadvantage to defendant, it was therefore reversible error.

It is well settled in this state that the admission or non-admission of testimony which is objected to as being immaterial or irrelevant is within the sound discretion of the trial justice. *State v. Rezendes,* 111 R. I. 169, 300 A.2d 472 (1973); *State v. Glass,* 107 R. I. 86, 265 A.2d 324 (1970); *State v. Reardon,* 101 R. I. 18, 219 A.2d 767 (1966). Here the question for ultimate determination by the jury was whether or not defendant had raped the prosecutrix. The excluded testimony clearly had no direct relevance to the question to be resolved, and therefore we conclude that the exclusion of such testimony was not an abuse of discretion.

In his closing arguments to the jury the prosecutor stated. "I believe [Mrs. H.], and I think that all the testimony that we've heard warrants your believing her story. * * * And, Ladies and Gentlemen, I ask you for that verdict because I think she was raped." The defendant moved that the case be passed on the ground that such statements by the prosecutor were prejudicial. The trial justice, after hearing arguments, concluded that such statements, even if prejudicial, could be cured by giving cautionary instructions to the jury. The defendant now contends that since the determination of this case is dependent upon the testi-

mony of the complaining witness on the one hand and defendant on the other, the statements by the prosecutor are most damaging and prejudicial, and that defendant is therefore entitled to a new trial. *State* v. *Sherman,* 113 R. I. 77, 317 A.2d 445 (1974); *State* v. *Kozukonis,* 100 R. I. 298, 214 A.2d 893 (1965); *State* v. *Peters,* 82 R. I. 292, 107 A.2d 428 (1954).

The question for determination is whether or not the statements were so prejudicial to defendant that the prejudice could not be cured by cautionary instructions by the trial justice. Comments by a prosecutor may be considered prejudicial if such remarks are extraneous to the issues in the case and tend to inflame and arouse the passions of the jury. *State* v. *Mancini,* 108 R. I. 261, 274 A.2d 742 (1971); *State* v. *Werner,* 87 R. I. 314, 140 A.2d 502 (1958). The defendant here has not contended that the prosecutor's statements of belief in the veracity of the state's witness were based on any information other than that which was in evidence at the trial; nor has he demonstrated how he was prejudiced by the statements complained of. Our reading of the instructions which were given to the jury by the trial justice satisfies us that the statements made by the prosecutor, even though tending to be prejudicial to defendant, were properly cured by the cautionary instructions which obviated any prejudice accruing to defendant.

The defendant next alleges that the trial justice committed reversible error when she instructed the jury that where the testimony of one witness is contradicted by that of another witness, it would be the duty of the jury to decide or determine on the basis of all the testimony which of those two witnesses is more entitled to belief.

The defendant argues that the instruction was not applicable to criminal cases since proof beyond a reasonable doubt is required, and that by such an instruction, the jury was misled as to the burden of proof necessary for conviction.

Prior to the statement, the trial justice had given lengthy instructions to the jury as to the burden of proof required in criminal cases. Unless the addition of further language serves to shift the burden of proof, such language will not amount to reversible error. *State* v. *Deans*, 93 R. I. 266, 174 A.2d 666 (1961). In our opinion, this instruction was proper since it merely advised the jury that it had the right to assess the testimony which was directly contradictory and to believe one witness and disbelieve the other. Furthermore it clearly did not shift the burden of proof, which remained constant throughout the trial justice's charge. Accordingly, we find nothing prejudicial to defendant in such a statement.

We next consider defendant's contention that the trial justice committed reversible error when she charged the jury that:

"One of the most distressing things ever to happen in a criminal justice system is for there to be a miscarriage of justice. And a miscarriage of justice can occur when an innocent man is convicted, or when a guilty man is acquitted."

The defendant contends that such a charge overstresses the obligation of a jury to reach a verdict, thereby causing pressure on the jury to reach a verdict, which results in prejudice to defendant. It is well settled that a trial justice is free to instruct the jury in his own words, as long as he correctly states the applicable law. *State* v. *Carillo*, 113 R. I. 32, 317 A.2d 449 (1974).

In our reading of the language complained of by defendant, we find no overemphasis on the obligation of the jury to reach a verdict; nor do we find an attempt by the trial justice to apply pressure on the jury to do so. Thus we conclude that there existed no prejudice to defendant as a result of this statement.

We next turn to defendant's contention that the trial justice failed to properly instruct the jury as to the neces-

sity. of resistance by the prosecutrix. The trial justice stated:

> "* * * the force referred to in this legal definition means the force used to overcome the resistance of the female. Not the force used in the sex act itself. * * * Resistance must be made in good faith to that degree which would exclude an inference that the woman consented. A woman is required to make such resistance to the force as would appear reasonable under all the circumstances. Now, in this connection of what is considered reasonable under the circumstances, you should consider, and you may consider, the relative strength of the parties. The place where the act is alleged to have occurred, the degree of force already manifested, or the threats which you believe might have been made. And, the effectiveness or the uselessness, or the apparent danger of resistance. Now, these are some, but not all, of the factors you can consider. You can also consider any other factors which, in your judgment, bear upon this question. You should make this judgment from the evidence that has been presented to you. And from this evidence you can make what we call reasonable inferences. And I will explain this to you later. The law says, if a female yields or consents without physically resisting, but she does so because of fear reasonably caused by threats of immediate bodily harm, then her consent to sexual intercourse is not consent at all because that consent was induced by fear."

The defendant argues that by this statement the trial justice had instructed the jury that the threat of *any* bodily harm negates consent, as consent would then be induced by fear. The defendant overlooks the testimony that a threat was made by defendant to kill the prosecutrix and also the testimony that defendant actually banged the head of the prosecutrix against the door and that he was holding her by the neck. In our opinion this evidence was sufficient in the circumstances to create a reasonable apprehension or fear of bodily harm sufficient to negate any inference of consent on the part of the prosecutrix.

It is generally accepted that although force is an essential element of the crime of rape, the actual application of force is not necessary if there is a threat of force involving a threat of death or serious bodily harm. 1 Wharton *Criminal Law & Procedure* §307 (1957). When there is evidence of force or a threat of force, the question of resistance on the part of the female must be considered. While some courts require the utmost resistance and the most vehement exercise of every physical means or faculty within the woman's power to resist, it is more generally recognized that resistance is relative and that the woman is not required to resist to the utmost of her physical strength if she reasonably believes that resistance would be useless and would result in serious bodily injury to her. It is generally held that the resistance required depends on the parties' relative strength, the amount of force manifested by the assailant, the fear instilled in the victim, and all other relevant circumstances. 65 Am.Jur.2d *Rape* §6 (1972). As to the degree of resistance which will exclude the conclusion or inference that the female gave her consent, it is generally held that she need only make such resistance to the force of the defendant as seems reasonable to offer under the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance, and the degree of force manifested. 1 Wharton, *supra,* §308.

We hold that *Wharton, supra,* correctly defines the amount of resistance required to negate any inference of consent on the part of a female in a rape prosecution. Here, the statement by the trial justice that "[t]he law says, if a female yields or consents without physically resisting, but she does so because of fear reasonably ·caused by threats of immediate bodily harm, then her consent to sexual intercourse is not consent at all because that consent

was induced by fear," is in accord with that definition which we approve.

The defendant next alleges that the statement of the trial justice to the jury that "uncontradicted and unimpeached expert testimony ought not to be arbitrarily disregarded," in effect instructs the jury that the testimony of Dr. Gerald DeLuca ought not to be arbitrarily disregarded. In order to properly construe the statement of the trial justice, we must read the instruction in its entirety, since challenged statements in a charge must not be considered in a vacuum but rather in the context of the charge as a whole. *State* v. *Lima*, 113 R. I. 6, 316 A.2d 501 (1974); *State* v. *Carraturo*, 112 R. I. 179, 308 A.2d 828 (1973). The entire statement of the trial justice reads as follows:

> "During the trial there was what is called opinion evidence also presented to you in testimony from Doctor DeLuca. This is called opinion or expert evidence. The law says that you are to consider expert opinion in the same manner as to the testimony of any other witness, and to determine any disputed issues according to your own judgment on the evidence. But, the law also says that uncontradicted and unimpeached expert testimony ought not to be arbitrarily disregarded. You still must consider the probative force of that evidence in the light of all the evidence, and give it the weight which you feel it is entitled to have."

This court, in the past, has said that uncontradicted and unimpeached expert testimony may not be arbitrarily disregarded. *State* v. *DiFraia*, 105 R. I. 169, 250 A.2d 358 (1969); *W. C. Viall Dairy, Inc.* v. *Providence Journal Co.*, 79 R. I. 416, 89 A.2d 839 (1952). However, the expert testimony must then be given only such probative weight as the jury shall determine. *State* v. *DiFraia*, *supra*, noting *State* v. *Supers*, 77 R. I. 251 at 253, 75 A.2d 27 at 28 (1950). Here, the statement of the trial justice accurately expresses

the law as stated in *DiFraia* and *Supers,* both *supra,* and consequently is not error.

Finally, the defendant contends that a new trial should have been ordered because the jury apparently deliberated for a period of only 13 minutes. For a jury to be prompt in arriving at a verdict is not in and of itself a sufficient reason for a new trial. *State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612 (1969). The claim for a new trial based on the short period of deliberation by the jury without a showing of any specific prejudice to the defendant is without merit. The defendant, citing *State* v. *Pepper,* 103 R. I. 310, 237 A.2d 330 (1968), also argues that the totality of errors complained of throughout the trial influenced the jury's verdict and that a new trial should have been ordered. This argument by the defendant is totally without merit.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the Superior Court.

Motion of defendant to reargue denied.

*Julius C. Michaelson,* Attorney General, *William G. Brody,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Paul E. Kelley,* Asst. Public Defender, for defendant.