STATE

v.

Richard E. COOKE.

No. 83–526–C.A.

Supreme Court of Rhode Island.

July 11, 1984.

Dennis J. Roberts II, Atty. Gen., Charles M. Nystedt, Sp. Asst. Atty. Gen., Providence, for plaintiff.

John A. O'Neill, Jr., Providence, for defendant.

## OPINION

SHEA, Justice.

The defendant, Richard E. Cooke, appeals from a Superior Court jury conviction on a two-count indictment for first-degree arson and attempted larceny. He was sentenced to the Adult Correctional Institutions for ten years on the arson count. The court ordered him to serve the first three years of his sentence. It suspended the remaining seven years and placed him on probation. The court also sentenced him to three years on the attempted larceny count, which sentence was to run concurrently. The issues on appeal involve portions of the jury instructions, the sufficiency of the evidence, and allegedly prejudicial comments by the prosecutor. We affirm.

### I

On the evening of November 18, 1980, a fire occurred at the home of defendant and his wife. The Smithfield Fire Department was called to the scene, where they discovered a fire in progress. The fire had already engulfed the garage and was rapidly spreading through the adjacent house. The firemen hosed down the blaze and left after it was extinguished. Later that eve-

ning, a rekindling occurred that required the fire department to return and permanently extinguish the fire.

Earlier that evening, defendant and his wife had been at a restaurant for dinner and drinks. After the couple returned home, they quarreled and defendant struck her. Mrs. Cooke ordered defendant to pack his belongings and to get out of the house. Mrs. Cooke then left her house and went to the house of her husband's brother, Edward, which was located just over three hundred feet down the driveway. The defendant followed her, and they resumed their argument in the brother's front yard. There defendant knocked his wife to the ground. When Edward Cooke came out of his house, the argument ended. The defendant's wife went inside Edward's house and called the Smithfield police department. The defendant left the yard and returned to his house.

According to defendant's testimony, he was the last person in his house. He testified that as he entered the house, he saw smoke but not flames. The defendant was then unable to remember what he did next or anything else that happened that night. He could not even remember leaving the house. The next thing he could remember was talking to his wife the following day somewhere on Route 44 near the Apple Valley Mall in Smithfield.

After defendant left his house the second time, the truck he was driving hit a stone wall bordering the driveway. The force of the collision was such that the front end of the chassis stuck on top of the stone wall and the left wheels were lifted off the ground.

Police Officer William Shepard testified that when he arrived, Edward Cooke and defendant's wife told him that they were standing in Edward's front yard when they saw defendant running down the driveway, across Mountaindale Road, and through the woods. It was then that they first noticed that defendant's house was on fire. This testimony was objected to; however, it was admitted as an excited utterance.

Approximately ninety minutes after that conversation that evening, Officer Shepard spotted defendant staggering and apparently intoxicated in the parking lot of the Apple Valley Mall. He asked defendant for identification. After initially giving a false name, defendant produced a driver's license that indicated his true name. The defendant told the officer that he gave a false name because he was nervous about being questioned by the police. Officer Shepard radioed the police station and informed them that he had located defendant. Based on the response the officer received, defendant was free to leave.

The day after the fire, the State Fire Marshal's Office and defendant's insurance carrier were contacted. On November 26, 1980, representatives of the insurance carrier examined the burned house. One of the examiners, William K. Hurteau, who qualified as an expert, testified that there were flammable-liquid burn patterns on the floor. He estimated that more than a half-gallon of flammable liquid would have been required to produce these burn patterns. His testimony was replete with references to the extent and strength of the gasoline odor under the debris and in the kitchen and hallway carpet. Mr. Hurteau indicated that he found clear evidence that flammable liquid had been placed on the concrete floor in the foyer; he testified that there was a crumbling effect on the concrete surface which indicated the presence of a flammable liquid. It was his expert opinion that the fire was intentionally set and could in no way have been accidental.

A sworn proof-of-loss insurance claim in excess of $54,000 was submitted by defendant to his insurance carrier. The state introduced this as a full exhibit. Testimony was given that the fire losses intentionally caused by the insured were not covered by the insurance policy in question.

The defendant made timely objections to portions of the jury instructions. He also objected to prejudicial comments made by the prosecutor during the trial. The de-

fendant was found guilty on both counts of the indictment. Following the denial of a motion for a new trial, he appealed to this court.

## II

The first issue we consider is the trial justice's refusal to give the jury instruction that defendant requested concerning expert testimony. The defendant claims this unduly prejudiced him. He argues that the instruction in effect told the jury that it had to accept the testimony of the state's expert witness because the defense did not present an expert of its own. The state maintains that the jury instruction was correct and is supported by *State v. Verdone*, 114 R.I. 613, 622–23, 337 A.2d 804, 810 (1975).

The pertinent portion of the instruction is as follows:

"These parties were all determined by the Court to be experts. Now, they gave you evidence which is considered opinion evidence. Now you are to consider this expert opinion in the same manner as the testimony of any other witness, and to determine the disputed issues according to your own judgment on all the evidence, enlightened, but not controlled by, the opinion of the expert witnesses.

"But keep in mind that uncontradicted and unimpeached expert testimony may not be arbitrarily disregarded. But you are still required to consider its probative force in the light of all the evidence and then give it the weight to which you feel it is entitled."

 The first paragraph of the above-quoted instruction embodies settled law in this state and is in accord with the great weight of authority. *State v. Supers*, 77 R.I. 251, 253, 75 A.2d 27, 28 (1950). This court has repeatedly said that uncontradicted and unimpeached expert testimony may not arbitrarily be disregarded. *State v. Verdone*, 114 R.I. at 622, 337 A.2d at 810; *State v. DiFraia*, 105 R.I. 169, 173, 250 A.2d 358, 360 (1969); *W.C. Viall Dairy, Inc. v. Providence Journal Co.*, 79 R.I.

416, 419, 89 A.2d 839, 840 (1952). However, the expert testimony is to be given only such probative weight as the jury decides is appropriate. *State v. Proulx*, R.I., 419 A.2d 835, 843 (1980); *State v. Verdone*, 114 R.I. at 622, 337 A.2d at 810. Here, the statement of the trial justice is virtually a verbatim recitation of the instruction specifically approved in *State v. Verdone*, 114 R.I. at 622–23, 337 A.2d at 810, with the exception of the first paragraph which was approved in *State v. Supers*, 77 R.I. at 253, 75 A.2d at 28. The trial justice's instruction was an accurate expression of the law. The defendant's argument is utterly without merit.

## III

Next, defendant raises two issues dealing with flight from the scene of the fire. The first issue involves the sufficiency of the evidence of flight to withstand a motion for a judgment of acquittal. The second issue involves the correctness of the jury instruction about flight.

### A

The defendant argues that the trial justice erred in denying his motion for a judgment of acquittal because evidence of mere presence at the scene of the fire followed by flight was insufficient to establish guilt. He relies on his testimony that he and his wife left their house at the same time. He contends that the jury had to speculate that it was defendant rather than his wife who set fire to the house. The state argues that the trial justice's decision is supported by all the evidence and that defendant's contention relies entirely on a narrow recitation of his direct testimony and ignores the remainder of the evidence.

 On a motion for judgment of acquittal, the trial justice's review of the evidence is limited to the evidence that the state claims is capable of establishing proof of guilt beyond a reasonable doubt. The trial justice is bound to consider the evidence and the reasonable inferences of

which it is susceptible in the light most favorable to the state. The motion should be denied if the evidence, so viewed and without regard either to its weight or to its credibility, is sufficient to warrant a jury finding that guilt has been established beyond a reasonable doubt. *State v. Cembrola,* R.I., 469 A.2d 362, 365 (1983); *State v. Pignolet,* R.I., 465 A.2d 176, 183–84 (1983). This court employs the same standard in reviewing the trial justice's decision. *State v. Austin,* R.I., 462 A.2d 359, 364 (1983); *State v. Armstrong,* R.I., 446 A.2d 1043, 1044 (1982).

 The evidence establishes that after the argument between defendant and his wife outside his brother Edward's house, defendant returned to his own house and Mrs. Cooke went into Edward's house. By his own testimony, defendant was the last person inside his house. There was testimony that when leaving the house, defendant apparently was in such a hurry that the truck he was driving struck a wall along the driveway and got stuck on top of it. Mrs. Cooke told Officer Shepard that she first noticed that her house was on fire when she saw defendant running down the road away from the house. Police Officer Shepard also testified that Edward Cooke told him that he first had seen defendant running from the driveway and then had noticed that the house was on fire. When defendant was stopped by Officer Shepard in the mall parking lot, he gave a false name; his real identity was not revealed until he produced his driver's license. Finally, an expert witness testified to the presence of a strong odor of gasoline and to the presence of flammable-liquid burn patterns on the floor of the house. It was this witness's expert opinion that the fire was intentionally set.

The state claims that this evidence is sufficient to establish defendant's guilt beyond a reasonable doubt. Viewing this evidence and the reasonable inferences of which it is susceptable in the light most favorable to the state and without regard *to either* its weight or credibility, we are of the opinion that it is sufficient to establish a prima facie case and thus to withstand a motion for a judgment of acquittal. The defendant overlooks all of the above-mentioned evidence and instead bases his argument solely upon the evidence of his and his wife's earlier departure from the house. We conclude that the trial justice did not err when he denied defendant's motion for judgment of acquittal.

### B

The defendant argues that the jury instruction involving flight ought not to have been given because it was unduly prejudicial to him. The state's response is that the jury may consider flight by defendant together with other facts and circumstances as long as the jurors are free, as they were here, to accord such evidence whatever weight they see fit. At trial, defendant objected to the introduction of evidence of his flight from the scene of the fire. He also objected to the following jury instruction:

"If the jury finds there is credible and probative evidence of the defendant's flight from the scene of the fire, then such may be considered by the jury in its discretion as evidence of the consciousness of guilt on the part of the defendant."

 It is settled practice in this state that relevant evidence of flight may be introduced as a circumstance bearing on the question of guilt that may be presented to the jury for consideration. *In re Caldarone,* 115 R.I. 316, 326, 345 A.2d 871, 876 (1975); *State v. Ouimette,* 110 R.I. 747, 774, 298 A.2d 124, 139 (1972); *State v. Falcone,* 41 R.I. 399, 401, 103 A. 961, 961 (1918). The relevancy of flight as evidence of a defendant's guilt, however, depends on the degree of confidence with which a chain of inferences can be followed: (first inference) something the defendant did led him to flee, (second inference) he fled out of consciousness of guilt, (third inference) his consciousness of guilt derived from consciousness of guilt concerning the crime

charged, and (fourth inference) his consciousness of guilt concerning a crime charged reflects actual guilt of the crime charged. *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir.1977). "Generally, the third and fourth inferences of [this] four-part *Myers* test are the most difficult to establish and courts have placed great reliance on the proximity in time of the flight to the crime charged in order to establish these inferences." *United States v. Howze,* 668 F.2d 322, 324–25 (7th Cir.1982).

■ When the time between a defendant's flight and the crime is virtually immediate, as in this case, the probative value of the flight is much greater than if the flight occurs several weeks or months later. Likewise, when flight occurs immediately, or shortly after a crime, evidence that a defendant knows he is fleeing from the specific crime charged and not some other crime or event becomes less important. *See United States v. Howze,* 668 F.2d at 325. Thus, the linchpin of flight as probative of guilt is a defendant's knowledge of the reason why he is fleeing and that the reason he is fleeing is related to the crime on trial. If a defendant has fled for a totally different reason, of course, then his flight is not at all probative of guilt of the instant charge.

■ There is evidence in the record that after the argument in Edward Cooke's yard, defendant returned to his house. Shortly thereafter he was seen running down the driveway and off into the woods. It was then that defendant's wife and brother first saw that the house was on fire. The defendant's whereabouts were unknown for about ninety minutes—until he was spotted by the police in the Apple Valley Mall parking lot. We conclude that the evidence of defendant's flight was relevant and therefore properly admitted. The defendant's flight from the scene of the fire occurred immediately. The evidence at trial supports the inference that defendant knew the reason he was fleeing and that that reason is related to the crime of arson.

■ The instruction given in the case at bar is substantially similar to the rule announced in *State v. Papa,* 32 R.I. 453, 461, 80 A. 12, 16 (1911). The trial justice expressly pointed out that if the jury found relevant evidence of defendant's flight from the scene of the fire, they could consider it evidence of consciousness of guilt. He also pointed out that the weight given to such evidence was left to the jury's discretion. Defense counsel objected to the flight instruction but failed to specify his grounds for objection as required by Rule 30 of the Superior Court Rules of Criminal Procedure. *See State v. Rodriquez,* 478 A.2d 171 (R.I.1984). We conclude that under the circumstances the instruction dealing with flight was correct. The defendant has not been unduly prejudiced. In the future, however, instructions dealing with flight should take into consideration the four inferences adopted above.

■ The defendant also argues that since the flight instruction was given, the trial justice should also have given a *"McGehearty*-like" instruction dealing with the effect of intoxication on a defendant's consciousness of guilt. *State v. McGehearty,* 121 R.I. 55, 60, 394 A.2d 1348, 1351 (1978). He does not ask for the instruction specifically required in *McGehearty.* Rather, and defendant's brief does not make this clear, he is apparently arguing for a *"McGehearty*-like" instruction that would allow the jury to take into consideration defendant's degree of intoxication as it related to the second inference, his consciousness of guilt. This issue was not presented to the trial justice below and is not now properly before us. Furthermore, defendant's argument is not clear, and we shall not speculate about what it is.

## IV

The final issue is whether remarks by the prosecutor directed at Edward Cooke, defendant's brother, to the effect that "We're trying to find out what the truth is here, Mr. Cooke, and I don't think you're telling the truth" were so prejudicial that

their impact could not be corrected by the trial justice's cautionary instruction and thus required the trial justice to pass the case. In addition, defendant argues that even if the cautionary instruction cured the earlier prejudicial comments, the prosecutor's closing argument reinflamed the prejudice of the jury. The state contends that the cautionary instruction was adequate to dispel any prejudice and that its closing argument was merely a traditional form of attack on the credibility of defendant and his brother.

Our review of the record confirms that the trial justice's cautionary instruction was adequate to dispel any prejudice to defendant. It was not necessary therefore to pass the case. The prosecutor's prejudicial comment was made just prior to the lunch-time recess. Immediately upon resuming after lunch, the trial justice instructed the jury to disregard the comment because it was improper. He then had it stricken from the record. The jury was told that the prosecutor's opinion of a witness's credibility was immaterial, and that the jurors alone were the judges of credibility. This was reiterated to the jury during the final charge. The denial of defendant's motion to pass is addressed to the sound discretion of the trial justice. *State v. Gianoulos*, 122 R.I. 67, 72, 404 A.2d 81, 83 (1979). Under the circumstances, we see no need to disturb the trial justice's decision.

Finally, there is the question of the prosecutor's final argument before the jury, which included in part, the following:

"Does Mr. Hurteau have a motive to lie here? Who's related to whom here? Does Mr. Edward Cooke have a motive to protect his brother?

"Of course he does. He doesn't want to see his brother be convicted. But you have to put that out of your mind.

"Or are you going to believe Edward Cooke when he gets up on the stand and does his little hat dance for you, and then he claims that he never said two things to Sergeant Burke in the written statement? Does that have a ring of truth?

"I submit to you that it does not."

"[S]tatements of a prosecutor's personal belief made during closing argument are * * * proper if premised upon facts adduced during the trial." *State v. Baccaire*, R.I., 470 A.2d 1147, 1151 (1984). Again, our review of the record convinces us that the prosecutor's closing argument was not improper.[1]

The defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

---

1. Our examination of the transcript discloses no point of objection by defendant to the state's closing argument, including the portion challenged for the first time on appeal. The state, on the other hand, has not challenged the preservation of this issue for review. Therefore, we have assumed that it is properly before us. We do not, however, waiver from our well-settled rule that an issue not preserved for appeal will not be considered by the court.