STATE

v.

Jerome BARNVILLE.

No. 80–380–C.A.

Supreme Court of Rhode Island.

May 20, 1982.

Reargument Denied May 20, 1982.

Dennis J. Roberts II, Atty. Gen., Madeline Quirk, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Atty., Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of conviction of conspiracy to commit robbery entered in the Superior Court. We affirm. The facts developed at the trial were as follows.

The principal prosecution witness, Karen Auger (Auger), had also been charged with

robbery as a result of this transaction. She had pleaded guilty to seven counts arising out of the incident and was sentenced after the trial of Jerome Barnville (Barnville). Auger testified that she had known Barnville for approximately seven or eight months prior to the incident upon which the criminal charges were based. She had frequently been a visitor at the Barnville home and knew Deborah Harris, Barnville's common-law wife. Auger further testified that on August 1, 1979, Barnville contacted her by phone and arranged to pick her up at her home, from which at his suggestion they went to the railroad station to pick up two of Barnville's friends. Barnville was at the time operating a white Lincoln automobile which bore the license plate "SISCO," a nickname used by Barnville.

After returning to the Barnville apartment, Auger, Barnville, and his two friends from New York who were referred to as "Joe" and "Tucky" went on to travel to several places that have no significance in connection with the issues in the present case.

Ultimately Barnville suggested that Auger don a white nurse's uniform. Shortly thereafter "Joe" and "Tucky," who had previously been let off at the Barnville apartment, were picked up. The defendant had earlier borrowed a clipboard from a gas station attendant. The four then went to a home occupied by the Toomey family on East Avenue in Pawtucket. Auger stated that she was instructed by defendant to attempt to gain entrance and to tell whoever answered the door that she and her companion "Joe" were conducting a medical survey. One of the Toomey children opened the door and let in the supposed survey team. "Tucky" came in behind Auger and "Joe." Upon gaining access to the house, the two men tied up the three Toomey teenagers and placed them on the floor while they searched the house for money and jewelry.

Upon completion of the search Auger, "Joe," and "Tucky" left the Toomey house and rejoined Barnville, who was waiting down the street in his automobile. They then returned to the Barnville apartment and divided the proceeds, which consisted of approximately $50. "Joe" and "Tucky" were returned to the railroad station at about 9 p.m. Barnville then took Auger home and told her to keep quiet about the happenings of that day.

Barnville took the stand in his own defense and testified that he had taken no part in the robbery. He suggested that his automobile might have been stolen or borrowed from his apartment driveway and used in the robbery. He further testified that Karen Auger had told him some months after the event that she had been involved in a robbery using the Barnville automobile. She claimed, according to Barnville, that she hadn't taken the car but that two men named "John" and "Harry" had taken the vehicle for this purpose. In support of his appeal defendant raises two issues.

I

## THE SELECTION OF THE JURY

In the course of jury selection two jurors were challenged by defense counsel on the ground that their answers were equivocal in respect to their impartiality. One juror, Mrs. Dianne R. Smith, disclosed that her husband was employed as a special police officer in East Providence. She further disclosed that her aunt had been the victim of a robbery shortly before the trial "and that very much might prejudice my feelings in the matter." The trial justice then asked several questions of the witness, which resulted in a final inquiry,

"THE COURT: If the state has not proved its case beyond a reasonable doubt, Mrs. Smith, will you be able to respond to your duty as a juror?

"MRS. SMITH: I believe so, yes."

After this exchange the court refused to excuse the juror for cause.

Another juror, Denis C. Traficante, stated that he was a former special officer of the East Providence police department and that his brother was also a former East Providence police officer. No questions were asked of Mr. Traficante concerning his ability to serve as an impartial juror. Nevertheless, defense counsel challenged the prospective juror, and the court declined to excuse the juror for cause.

It is significant to note that neither of these jurors served on the panel because both were peremptorily challenged in the course of jury selection.

The thrust of defendant's argument in support of this issue is that his peremptory challenges were diluted and diminished because of the necessity of utilizing two of his peremptory challenges to eliminate these prospective jurors from the panel.[1] The defendant asserts that when a peremptory challenge is effectively taken away by the court's erroneous refusal to disqualify a prospective juror for cause, defendant need not show specific prejudice. For this proposition defendant cites *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Unfortunately, the holding in *Swain* did not in any way bear upon the proposition asserted. That case dealt with the issue of the state's alleged use of peremptory challenges to eliminate black members of a jury panel in the Talladega County, Alabama. Mr. Justice White, speaking for the Court, ultimately concluded:

"we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case." *Id.* at 222, 85 S.Ct. at 837, 13 L.Ed.2d at 773.

In the course of reaching this conclusion, Justice White analyzed the history of the development of peremptory challenges and did observe:

"Although 'there is nothing in the Constitution of the United States which re-

quires the Congress [or the States] to grant peremptory challenges,' *Stilson v. United States*, 250 U.S. 583, 586 [40 S.Ct. 28, 29, 63 L.Ed. 1154], nonetheless the challenge is 'one of the most important of the rights secured to the accused,' *Pointer v. United States*, 151 U.S. 396, 408, [14 S.Ct. 410, 414, 38 L.Ed. 208]. The denial or impairment of the right is reversible error without a showing of prejudice, *Lewis v. United States, supra; Harrison v. United States*, 163 U.S. 140 [16 S.Ct. 961, 41 L.Ed. 104]; *cf. Gulf Colorado & Santa Fe R. Co. v. Shane*, 157 U.S. 348 [15 S.Ct. 641, 39 L.Ed. 727]. 'For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' *Lewis v. United States, supra*, at 378." *Id.* at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772.

In *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), the issue presented related to the method utilized by the trial court in the exercise of peremptory challenges. Among other problems noted was the fact that the defendant was required to challenge jurors without the opportunity to confront and inspect them. In short, the Court found that the prisoner was not brought face to face with the jury until after the peremptory challenges had been made. It was this defect in procedure which was central to the Court's determination that reversible error had been committed. In *Harrison v. United States*, 163 U.S. 140, 16 S.Ct. 961, 41 L.Ed. 104 (1896), reversible error was found when the trial judge accorded the defendant in a criminal case only three peremptory challenges when in fact by statute he was entitled to ten such challenges. In *Gulf, Colorado and Santa Fe Railway Co. v. Shane*, 157 U.S. 348, 15 S.Ct. 641, 39 L.Ed. 727 (1895), the Court found reversible error to have been committed by the trial court in refusing to

1. Rule 24 of the Superior Court Rules of Criminal Procedure provides that in the case of offenses punishable by more than one year's imprisonment, each side is entitled to six peremptory challenges. The instant offense was punishable by a maximum of ten years' imprisonment. The sentence actually imposed in this case was imprisonment for a term of ten years.

follow statutory procedures relating to peremptory challenges and substituting for such procedures a local rule or custom of court. Obviously in the exercise of its supervisory capacity, the Supreme Court disapproved of these practices.

In short, none of the Supreme Court cases cited support the proposition advanced by defendant beyond an expression of dictum in *Swain* unnecessary to the decision of the case presented to the Court. Thus, this is a matter of first impression in this state not controlled by any constitutional decision of the Supreme Court of the United States.

 Assuming, without deciding, that the two challenged jurors should have been excused for cause, we are of the opinion that this, without more, does not so impair the right of peremptory challenge as to constitute reversible error. The record furnished by defendant does not demonstrate that the jury as finally selected was in any way unsatisfactory to defendant or that any persons who served thereon were lacking in any way in impartiality.

 We are of the opinion that a minimal requirement to the assertion of prejudicial error in such a context would be that upon exhaustion of a defendant's peremptory challenges, he should bring to the attention of the trial justice that he is unsatisfied with the makeup of the jury assembled to try the case. *See State v. Patriarca*, 112 R.I. 14, 27, 308 A.2d 300, 309–10 (1973). It is true that in *Patriarca* the peremptory challenges were not exhausted and, therefore, objections to challenges for cause were deemed to be waived. Here, however, it is contended that the challenges were exhausted. This would not obviate the general requirement that an issue be raised in the trial court at a juncture where a remedy may be devised before such issue is argued in an appellate court as ground for reversal. There has long been a guiding principle in

this jurisdiction that issues not raised in the trial court will not be considered for the first time on appeal.[2] *See, e.g., State v. Fogarty,* R.I., 433 A.2d 972 (1981); *State v. Robalewski,* R.I., 418 A.2d 817 (1980); *State v. Pope,* R.I., 414 A.2d 781 (1980). Judgments in criminal and civil cases should not be set aside on the ground of lack of impartiality on the part of jurors unless it can be demonstrated that both the final members chosen to serve on the jury were in some way lacking in impartiality and that this fact had been brought to the attention of the trial justice. Consequently, defendant's argument on this issue cannot prevail.

## II

### THE EXCLUSION OF THE REPLACEMENT LICENSE

Barnville testified at trial that during the month of July he had made a trip to Boston with Auger and his wife. He stated that during the course of this trip he put his wallet into his jacket, which in turn had been placed on the rear seat of his car. Upon his return he discovered that the wallet was lost or had been taken from his jacket. Barnville asserted that the wallet had contained a spare key to the Lincoln. In order to corroborate this testimony, Barnville attempted to introduce a temporary or replacement driver's license that he had been required to obtain since his regular license was inside the missing wallet. The trial justice rejected this evidence on the ground of "remoteness."

The defendant argues that the rejection of his offer to introduce a replacement license issued by the Registry of Motor Vehicles approximately one week before the robbery constituted reversible error. Generally relevant evidence has been defined as evidence that has a tendency to prove or disprove a fact provable in the case. *State v. Santos,* R.I., 413 A.2d 58, 69 (1980);

---

2. The unique circumstances which obtained in *State v. McGehearty*, R.I., 394 A.2d 1348 (1978), were not present in the case at bar.

*McCormick's Handbook of the Law of Evidence* § 185 at 435 (2d ed. Cleary 1972); *see* 1 Wigmore, *Evidence* §§ 12, 25–29(a) (3d ed. 1940); James, *Relevancy, Probability and the Law*, 29 Cal.L.Rev. 689 (1941); *see also* Fed.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

■ Although the foregoing principles are not difficult to state, in particular cases such principles are often not easily applied. This is particularly true in respect to the admission or exclusion of circumstantial evidence. It is for this reason that we have frequently stated that questions of relevancy are addressed to the sound discretion of the trial justice. *State v. Camerlin*, 116 R.I. 726, 729, 360 A.2d 862, 865 (1976); *State v. Verdone*, 114 R.I. 613, 617, 337 A.2d 804, 808 (1975); *State v. Mastracchio*, 112 R.I. 487, 491, 312 A.2d 190, 193 (1973); *State v. Duffy*, 112 R.I. 276, 286, 308 A.2d 796, 802 (1973), overruled on other grounds, *State v. McGehearty*, R.I., 394 A.2d 1348, 1351 (1978). Thus, we review only for an abuse of such discretion.[3] We find no such abuse in the case at bar.

■ The trial justice's exclusion on the ground of remoteness was tantamount to a finding that the evidence was not relevant. Certainly, reasonable minds, in applying the technique of syllogistic deduction, could have reached differing conclusions concerning whether the replacement license tended to prove that the defendant's car had been stolen or borrowed. The existence of the replacement license was strongly probative of the proposition that the defendant's original license had been stolen, lost, or misplaced. The existence of the replacement license would be mildly probative of the proposition that the defendant's wallet may have been stolen, lost, or misplaced. However, on the crucial issues of the purloining of the defendant's automobile key and the use of that automobile key by Karen Auger or her confederates to steal or borrow the defendant's car for use in the robbery, the existence or nonexistence of a replacement license is reduced in probative value almost to the vanishing point. We have said that the exclusion of evidence on the ground of relevancy is not reversible error unless (1) the trial justice abused his or her discretion and (2) thereby caused substantial injury to the party seeking the admission of such evidence. *Gaglione v. Cardi*, R.I., 388 A.2d 361, 363 (1978). Substantial injury occurs

---

**3.** The need for the vesting of wide discretion in trial justices in ruling on the admission or exclusion of evidence on the grounds of relevancy is widely recognized. *See, e.g., Nonni v. Commonwealth*, 356 Mass. 264, 249 N.E.2d 644 (1969); *Thompson v. American Steel & Wire Co.*, 317 Pa. 7, 175 A. 541 (1934); *State v. Anderson*, 253 S.C. 168, 169 S.E.2d 706 (1969). In *Anderson* the Supreme Court of South Carolina observed:

"many hundreds of potential relevancy issues passed before the trial judge. It is neither desirable nor possible for this court to lay down any general rule that will serve as a solution for every issue, for it is a different question of experience and common sense in each instance. * * * The precedents in the area of relevancy are of very limited value, and the trial judge must have wide discretion on the innumerable questions of relevancy before him. His decisions should be reversed only for abuse of that discretion." 253 S.C. at 182, 169 S.E.2d at 712.

Professor James in *Relevancy, Probability and the Law*, 29 Cal.L.Rev. 689 (1941) expressed the logical tests of relevance in both inductive and deductive terms. In respect to the exclusion of evidence he stated:

"Probably the greatest part of judicial rulings excluding evidence as irrelevant go primarily on the first principle—that the evidence is relevant, but its probative value is so slight as not to justify the time and expense involved in receiving it and the confusion of issues which might result in the mind of the trier of fact." *Id.* at 701.

He went on to observe:

"Because of the wide range of relevant evidence under such a test, the trial judge must have discretion to exclude it, and may well be furnished with general criteria to aid, but not to control, the exercise of this discretion. * * * Where remote evidence was excluded, an upper court should refuse to reverse unless it appears that a contrary ruling would actually have altered the result." *Id.* at 704.

only if such evidence was relevant and material to a crucial issue and if the evidence, if admitted, would have had a controlling influence on a material aspect of the case. *Id.; Urbani v. Razza,* 103 R.I. 445, 449, 238 A.2d 383, 386 (1968). Applying these tests to the exclusion of the replacement license in the case at bar, we are of the opinion that the defendant has demonstrated neither an abuse of discretion nor substantial injury resulting from such exclusion.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.