STATE

v.

**Dolores R. TAVAROZZI.**

**No. 81–110–C.A.**

Supreme Court of Rhode Island.

June 18, 1982.

Dennis J. Roberts, II, Atty. Gen., Charles Daniel Schrock, Sp. Asst. Atty. Gen., for plaintiff.

McKinnon & Fortunato, Stephen J. Fortunato, Jr., Pawtucket, for defendant.

## OPINION

WEISBERGER, Justice.

This is an appeal from judgments entered by the Superior Court finding the defendant guilty of disorderly conduct and of assault. We find that the statute underlying the disorderly conduct conviction was unconstitutionally applied and that testimony relevant to the assault charge was wrongfully excluded. We therefore reverse the convictions.

The facts in this case stem from defendant's participation in a St. Patrick's Day celebration at a local eating and drinking establishment, the Meshanticut Green. Three glasses of wine and a traditional corned-beef-and-cabbage supper may have rendered homage to the legendary saint, but, unfortunately, they also involved defendant in a less-than-enviable set of circumstances. Dolores Tavarozzi (nee Sullivan) innocently began her observance of the occasion by the "wearing o' the green." After work, her boss invited her for a drink in honor of the day and in celebration of the successful closing of a business deal. Dur-

ing the approximately two hours they were at the Meshanticut Green together, he ordered two glasses of wine for her, two beers for himself, and corned beef and cabbage for both of them. After he had left, defendant ordered another glass of wine and talked with two women who were sitting nearby. The defendant testified "that some time" later she felt nauseated, eventually found her way to a chair, sat in it, and put her hand to her head. In narrating what happened from this point, which occurred some four hours after her arrival at the Meshanticut Green, defendant and the state presented differing versions of the facts.

The state alleged that a uniformed police officer on special detail approached defendant, who "appeared to have had too much to drink," and asked her to leave. The officer testified that he asked her where she lived and offered to help her to get a ride home. He asserted that she stated her address as "Alaska" and began speaking in a loud and vulgar manner. According to the officer, while he was escorting her out of the restaurant she hit him several times with the pocketbook he had retrieved for her. He further stated that she attempted to kick him and succeeded in doing so and continued kicking so vigorously in all directions that she kicked off both her high-heeled shoes. A second uniformed officer testified that he assisted in the attempt to subdue defendant and helped to handcuff her. Both officers testified that each one had neither struck defendant nor seen the other strike her.

A female employee of the Meshanticut Green stationed at the entrance to the restaurant substantially corroborated the officers' testimony regarding the "kicking and hitting * * * and using * * * a very very vulgar language * * *." She also stated that at one point defendant "kicked the officer both feet at once, and went down and banged her head on the exit door handle." The employee further testified that the officers "never raised a hand to [the defendant] except to try and get handcuffs on her * * *."

The testimony of defendant, however, recounts a different story. She alleged that the officer accused her of being drunk while she was sitting in a chair feeling ill. She denied striking the officer, attempting to kick anyone, or using obscene language. She also testified that the officer grabbed her by the arm, picked her out of the chair, and pushed her toward the entry way and against a wall. The defendant further stated that one or more officers grabbed her by the legs and arms, dragged her out of the restaurant banging her head and back on the cement steps, stepped on her wrist, and kicked her in the thigh before putting her into the squad car.

In corroboration of her testimony, defendant offered into evidence several photographs depicting her injuries. She also attempted to introduce through the testimony of her daughter evidence of defendant's physical condition and demeanor upon her return home early the next morning. The trial judge, however, did not permit this line of testimony, finding that it was not relevant to the charges and that any possible remote probative value was far outweighed by its prejudicial effect.

The defendant was convicted of disorderly conduct in violation of G.L. 1956 (1981 Reenactment) § 11–45–1(b) and of assault.

The first issue before us on appeal is the propriety of the exclusion of the testimony of defendant's daughter. The defendant also challenges the constitutionality of § 11–45–1(b), which underlies her conviction for disorderly conduct. Our finding in respect to § 11–45–1(b) precludes the need to reach defendant's third reason for appeal. We shall first address the evidentiary question which relates to the conviction for assault.

■■■■ Questions of relevancy of testimony are within the sound discretion of the trial justice. *State v. Barnville*, R.I., 445 A.2d 298 at 302 (R.I., 1982); *State v. Camerlin*, 116 R.I. 726, 729, 360 A.2d 862, 865 (1976). This discretion, however, is not boundless. In *State v. Camerlin*, we reversed a finding of irrelevancy because we determined that the evidence in question

was relevant to an issue other than the one considered by the trial judge. *Id.* at 730–32, 360 A.2d at 865–66. We also reviewed a determination of irrelevancy in *State v. Verdone*, 114 R.I. 613, 337 A.2d 804 (1975). In that case we concluded that there was no abuse of discretion because "[t]he excluded testimony clearly had no direct relevance to the question to be resolved * * *." *Id.* at 617, 337 A.2d at 808. More recently, in *State v. Barnville, supra*, at 302, we upheld the trial justice's exclusion of a replacement driver's license because its probative value to the proposition for which it was offered was "reduced * * * almost to the vanishing point." A trial justice's determinations regarding relevancy are therefore subject to our review for abuse of discretion. A trial justice abuses his discretion when in exercise thereof he makes a choice that is manifestly inappropriate to the controlling law.[1]

■ Evidence tending to prove or disprove a fact provable in the case is relevant. *State v. Barnville, supra*, at 301; *McCormick's Handbook of the Law of Evidence* § 185 at 435 (2d ed. Cleary 1972). Relevant evidence should, however, be excluded when its prejudicial effect outweighs its probative value. *Id.* at 438–41. Thus, excluding evidence that is probative of a fact material to the case and which is not unduly prejudicial is an abuse of discretion.

■ The court in the instant case instructed the jury on self-defense, thereby placing the defense in issue. An arrestee is not privileged to resist forcefully a lawful or unlawful arrest unless the arresting officer employed excessive force. *State v. Gelinas*, R.I., 417 A.2d 1381, 1385 (1980); *State v. Ramsdell*, 109 R.I. 320, 326–27, 285 A.2d 399, 404 (1971). If the officer used reasonable force, the defense of self-defense is not available. Further, if the defense is availa-

ble, an arrestee is not privileged to use force that is greater than necessary to defend against the excessive force. *Id.* at 327, 285 A.2d at 404. Evidence describing defendant's physical condition and demeanor when she finally arrived home would be clearly probative of the amount of force to which she had been subjected. This in turn would tend to prove whether or not the force used by the officers was excessive and, if so, whether or not the force used by defendant to protect herself was greater than necessary. The excluded testimony was therefore relevant to the issue of self-defense. All evidence supportive of this defense is prejudicial to a prosecutor's case, but such evidence will be excluded only if its prejudicial effect outweighs the degree of its probative value. In this case the proffered testimony concerning defendant's physical condition and demeanor would not be so unduly prejudicial as to outweigh its probative effect. It was therefore not within the bounds of discretion to exclude that relevant testimony.

We have recently reaffirmed that wrongly excluded relevant evidence does not constitute reversible error unless such evidence "would have had a controlling influence on a material aspect of the case." *State v. Barnville, supra*, at 303; *see Gaglione v. Cardi*, 120 R.I. 534, 538, 388 A.2d 361, 363 (1978). Without question, evidence tending to prove that an assault was justified in the resistance of excessive force would reach that requisite level of influence and materiality. We are of the opinion, therefore, that the conviction for assault must be reversed.

■ The defendant challenges her conviction of disorderly conduct on constitutional grounds. She contends that § 11–45–1(b) is void for vagueness. The statute

---

1. An exercise of judicial discretion may be classified as belonging to one of two general categories. The first type accords to judges freedom of choice in areas unhampered by legal rules. A simple yet familiar example is a decision to recess court. Such a determination is unreviewable. The second class of judicial discretion also involves freedom of choice but the choices are limited, bounded by the law, and reviewable. Lord Coke has defined this category of discretion as "discernere per legem quid sit justum" ("to see what would be just according to the laws in the premises"). 7 Coke, *Institutes of the Laws of England* 41 (London, 1797). An abuse of this type of discretion occurs when a choice made is not within the discretionary area established by the law.

prohibits a person from intentionally, knowingly, or recklessly

"(b) in a public place or near a private residence that he has no right to occupy, disturb[ing] another person by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities * * *."

The defendant alleges that the terms "disturb," "loud and unreasonable noise," and "person of average sensibilities" are so indefinite that an average person is not adequately warned of what is forbidden by the statute. We need not and do not reach the vagueness issue because § 11–45–1(b) constitutionally cannot be applied to speech.

Consistent with first amendment guarantees, the Supreme Court of the United States has emphatically proclaimed that only very limited classes of speech may be proscribed. *Gooding v. Wilson*, 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 414 (1972); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942). The Court has approved of the regulation of speech that is obscene, *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); libelous in varying contexts, *see, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); or likely to provoke a violent reaction, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The Court has never expressly stated that bare profanity could be proscribed.[2] We, however, have interpreted recent Supreme Court decisions as prohibiting the regulation of mere profanity. In *State v. Authelet*, 120 R.I. 42, 385 A.2d 642 (1978), we held that profanity could be punished only if the language to be restricted fell within the "fighting words" category announced in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). *State v. Authelet*, 120 R.I. at 50, 385 A.2d at 646. This was a reasonable construction necessary to save the statute from constitutional infirmity.

The *Chaplinsky* court upheld a statute somewhat similar to the one here in question because the state court had previously determined that the statute restricted only those words tending to provoke violence. *Chaplinsky v. New Hampshire*, 315 U.S. at 573–74, 62 S.Ct. at 770, 86 L.Ed. at 1036. This, the Court indicated, was a permissible regulation of language belonging to the "fighting words" class. "Fighting words," the Court explained, were words whose "very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035. Subsequently, in *Cohen v. California*, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291 (1971), the Court further defined "fighting words" as "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." Relying on *Cohen*, we recently stated that "[a] person's language cannot be punished as 'fighting words' simply for being profane because 'it is * * * often true that one man's vulgarity is another's lyric.'" *State v. McKenna*, R.I., 415 A.2d 729, 731 (1980).

The statute here in question does not expressly purport to regulate "speech" but rather "noise." The loud and unreasonable noise defendant was accused of making, however, consisted of loud and vulgar speech. In effect, the prosecution in this case is thereby seeking to punish potentially protected speech under the guise of noise. In *Commonwealth v. A Juvenile*, 368 Mass. 580, 334 N.E.2d 617 (1975), the Supreme Judicial Court was confronted with a similar problem. In that case a juvenile was determined to be delinquent in that he was

---

**2.** In *Cohen v. California*, 403 U.S. 15, 26, 91 S.Ct. 1780, 1788–89, 29 L.Ed.2d 284, 294–95 (1971), the Court found that the state could not proscribe the public display of a four-letter expletive absent a more compelling reason for action. Although the opinion indicates that the Court's reasoning might apply to utterances, the holding was limited to display. *See id.* at 23–25, 91 S.Ct. at 1787–88, 29 L.Ed.2d at 292–94.

found to have been a disorderly person within the definition of Mass.Gen.Laws Ann. ch. 272, § 53 (West). The finding was based upon evidence that the juvenile had unleashed a verbal onslaught against a saleswoman in a Boston department store and continued the onslaught for approximately forty minutes against other store personnel including a security guard. The juvenile expressed himself in vulgar and profane four-letter words, with sufficient volume and boisterousness to the extent that he attracted a crowd of approximately 100 shoppers. Chief Justice Hennessey, speaking for the court, considered an attack upon the statute in light of a limiting opinion earlier set forth in *Alegata v. Commonwealth*, 353 Mass. 287, 231 N.E.2d 201 (1967). In *Alegata*, the court held that a person would be guilty of disorderly conduct if " 'with purpose to cause public inconvenience, annoyance or alarm, * * * he * * * makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; * * *.' " *Id.* at 304, 231 N.E.2d at 211. Analyzing the challenge based upon overbreadth in light of constitutional adjudications by the Supreme Court, Chief Justice Hennessey observed:

> "Applying these principles, we hold that, despite the construction given the term 'idle and disorderly persons' in the *Alegata* case, the offense of being a disorderly person in so far as it encompasses speech or expressive conduct is not sufficiently narrowly and precisely drawn to ensure that it reach only that speech which the State has a justifiable and compelling interest in regulating, and is therefore overbroad. However, we conclude that as reaching to *conduct* (other than expressive conduct), the § 53 'idle and disorderly persons' provision is neither unconstitutionally overbroad nor vague." (Emphasis in original.) *Com-*

*monwealth v. A Juvenile*, 368 Mass. at 587, 334 N.E.2d at 622

 We concur in the analysis of the Supreme Judicial Court and are also of the opinion that the state may not impose criminal sanctions upon speech under the rubric of prevention of loud and unreasonable noise. Although speech may be noisy and profane, it may nevertheless be protected save for the rather narrow *Chaplinsky* exception. *See, e.g., Lewis v. New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Rosenfeld v. New Jersey*, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 331 (1972); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

Within the constraints placed upon us by the Supreme Court of the United States, we would be required to construe § 11–45–1(b) as impermissibly overbroad in the event that it should be applied to speech. We construe this statute, however, as inapplicable to speech [3] and find that it is neither vague nor overbroad when applied to conduct other than speech. Obviously, the propriety of criminal sanctions in respect to conduct would of necessity be determined on the basis of the facts in each particular case. We hold only that in respect to conduct other than speech, the statute is not facially unconstitutional. Consequently, the defendant's conviction for disorderly conduct consisting of loud, profane, and opprobrious speech is constitutionally impermissible.

For the reasons stated, the defendant's appeal is sustained, the judgments of conviction below are reversed, and the papers in the case are remanded to the Superior Court for further proceedings consistent with this opinion.

---

**3.** We do not suggest that it is beyond the legislative power reasonably to regulate speech in respect to time, place, or volume. However, such regulation would require a more narrowly and precisely drawn statute than that under consideration in the case at bar. *See Cox v.*

*Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).