STATE
v.
Gloria CALITRI.

No. 80–563–C.A.

Supreme Court of Rhode Island.

April 27, 1983.

Reargument Denied, May 26, 1983.

Dennis J. Roberts II, Atty. Gen., William P. Rampone, Sharon P. O'Keefe, Sp. Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Janice M. Weisfeld, Asst. Public Defender, for defendant.

## OPINION

SHEA, Justice.

The defendant, Gloria Calitri (Calitri), stands convicted by a Superior Court jury of fraudulent conversion in violation of G.L. 1956 (1969 Reenactment) §§ 11–41–3 and 11–41–5, as amended by P.L.1980, ch. 318, § 1. On appeal, she claims that the trial justice erred by refusing to allow into evidence monthly reports prepared by her. She also appeals the refusal of the trial justice to instruct the jury on the crime of embezzlement of a sum under $500. We affirm.

The Urban League of Rhode Island employed Calitri as its bookkeeper from September 1977 until March 22, 1979. In her capacity as bookkeeper, she had total control of the accounting system of the Urban League. Her responsibilities included keeping appropriate records of all funds received and disbursed by the Urban League.

In late January or early February 1979, Errol Hunt, the executive director of the Urban League, became aware that various ledgers were missing. These ledgers had been in Calitri's possession. Hunt directed her to reconstruct the missing ledgers so that the accountant could begin an audit. Calitri told Hunt that the accountant did not need everything reconstructed, that he would only make a cursory check of the books. Hunt insisted that she reproduce the ledgers.

Calitri began to reproduce the ledgers but failed to complete the reconstruction before her termination from the Urban League. It is unclear from the record why Hunt terminated Calitri. He did state that the work Calitri did prior to reconstructing the ledgers was "very good," "accurate," and "legible." Unlike her previous work, however, the reconstructed ledgers were illegible.

Shortly after Hunt terminated Calitri, he received a phone call from the President of Citizens Bank, who gave Hunt information indicating that Urban League funds had been misappropriated. The following day, Hunt and Larry Brown, the Urban League accountant, reviewed some of the agency's records. They determined that Calitri had made out and endorsed a number of checks without authority. The only people with authority to sign Urban League checks were the president, the treasurer, and Hunt. There was a $200 limit on Hunt's check-writing authority. Hunt and Brown discovered checks that Hunt had signed when blank made out by Calitri for amounts in excess of $200.

On April 2, 1979 Hunt went to the State Police to report that funds were missing from the Urban League. Then he spoke with Calitri, who denied any wrongdoing. In the meantime, Brown conducted an audit of the books and ledgers of each of the league's five financial accounts. To conduct the audit, Brown had to use books that had been reconstructed by Adele Roderick, who replaced Calitri as bookkeeper for the Urban League.

The audit revealed that numerous checks amounting to a substantial sum of money had been written on the various accounts, cashed, and not redeposited into the general account of the Urban League. Brown also found that entries had been made on the check stubs for amounts that differed from those on the canceled checks. For example, check number 338 was entered as $216.37 payable to "Narragansett Electric." Upon examination of the actual check, Brown found that it was payable to "Urban League, General Fund, Cash" in the amount of $500. This check and all of the other checks involved in the apparent embezzlement had been endorsed and cashed by Calitri.

The type of audit Brown conducted was a fraud audit, which generally requires 100 percent reconstruction of the books. Brown examined every check written during the course of the audit period. He attempted to determine the amount of money granted or donated to the agency by requesting outside confirmation from funding sources or contributors. He also examined the cash-disbursements account for every check,

then traced these checks, and also examined any supporting documentation. He examined all transfers between bank accounts and all paid invoices.

As a result of the fraud audit, Brown determined that the sum of $87,437.84 was missing from the Urban League. Brown traced the missing funds to checks endorsed and cashed by Calitri at Citizens Bank. A large number of these checks contained the word "cash" after a designated payee.

On appeal, Calitri first claims that the trial justice erred by refusing to admit copies of typewritten monthly reports prepared by Calitri for the board of directors. At trial, Hunt identified these reports. He testified that the reports were prepared by Calitri and submitted to the board of directors for use by the treasurer in his report at the monthly meetings. He also stated that nothing in the reports indicated that Calitri had misappropriated any funds.

The accountant, Brown, testified that when he performed the fraud audit, he looked at some of the monthly reports. However, he could not use the reports for his audit because he did not have the original set of books from which the reports had been generated.

Defense counsel offered the monthly reports to rebut the evidence that Calitri had misappropriated funds and that she had reconstructed the ledger in a sloppy, illegible manner. The state contended that the reports were irrelevant, that their introduction would only confuse the jury, and that the reconstructed ledgers, not the reports, reflected the actual expenses of the Urban League.

In ruling on the defense motion, the trial justice stated:

"Defendant's A for identification is a series—a whole group of monthly reports which, according to the evidence, were prepared by Miss Calitri. The auditor, Mr. Brown, testified he didn't use them and he had no use for them. They were offered, according to Mr. Casparian's statement, simply to show that Miss Calitri contrary to the State's evidence did keep neat and correct records—keep neat and legible records. All of the general entries are all handwritten, all handwritten entries. Exhibit A for identification consists of typewritten monthly reports. It seems to me the presentation of typewritten reports to show legible work was done is not really appropriate. I frankly think they are not probative on the items for which they are offered."

Relevant evidence tends to establish a proposition that is at issue in the case. Evidence may be excluded as irrelevant when it is not probative of the proposition at which it is directed or is directed to a proposition that is not provable in the case. *McCormick's Handbook of the Law of Evidence* § 185 at 434–35 (2d ed. Cleary 1972).

Questions of relevancy are directed to the sound discretion of the trial justice. *State v. Tavarozzi*, R.I., 446 A.2d 1048, 1050 (1982); *State v. Barnville*, R.I., 445 A.2d 298, 302 (1982). The exclusion of evidence on grounds of relevancy does not constitute reversible error unless the trial justice (1) abused his or her discretion, and (2) thereby caused substantial injury to the party seeking admission of such evidence. *State v. Barnville, supra.* Applying the foregoing principles to the case at bar, we find no reversible error.

Two different types of judicial discretion exist. The first type, which is unreviewable, accords to trial justices freedom of choice in areas unhampered by legal rules. For example, a decision to recess court falls within this category of discretion. The second type of judicial discretion involves freedom of choice, but the choices are limited, bounded by law, and reviewable. An abuse of this type of discretion occurs when the trial justice's choice is not within the discretionary area established by the law. *State v. Tavarozzi*, 446 A.2d at 1051 n. 1. Questions of relevancy involve the second type of judicial discretion.

Although the monthly reports were identified by Hunt as prepared by Calitri for

the meeting of the Board of Directors, neither Calitri nor anyone else testified that the reports were a complete and accurate representation of the financial status of the Urban League. Calitri offered these records to prove two different propositions. First, the reports clearly were not probative of the proposition that Calitri kept neat and legible records. The state had already offered evidence that Calitri had, in the past, kept neat, legible ledgers. Only after Calitri had been told to reconstruct the ledgers that were missing did the reconstructed records become sloppy and illegible. Calitri's typewritten monthly reports from September 1977 until February 1979 had no bearing on the issue of why, when directed to reconstruct missing records in February of 1979, she did so in a way that made the ledgers unreadable and not understandable.

Second, Calitri argues that she offered the reports to demonstrate that she did not embezzle the money. These reports are not probative of that proposition. Calitri failed to show that the reports were complete and accurate. The defense offered no testimony that the figures contained in the reports related to the actual receipts and expenses of the agency. In fact, Brown testified that he could not use the reports in his fraud audit because he did not have the original books from which the figures had been generated. Clearly, the decision not to admit the reports was within the discretionary area established by the law.

Even if the trial justice abused his discretion by not admitting this evidence, Calitri failed to demonstrate a substantial injury. Substantial injury occurs only if the excluded evidence would have had a controlling influence on a material aspect of the case. *State v. Barnville,* 445 A.2d at 303. The state presented overwhelming evidence of embezzlement. It traced each check written on the Urban League account and established that Calitri had personally endorsed and cashed the checks and had failed to use the money for legitimate Urban League expenses. The failure to admit the unsubstantiated monthly reports was not prejudicial.

Calitri also contends that the trial justice erred by refusing to instruct the jury on the lesser included offense of embezzlement of a sum under $500. We disagree.

A defendant is not entitled to a lesser-included-offense charge unless the evidence warrants it. The evidence does not warrant such a charge unless the element that distinguishes the two offenses is contested by a defendant. *State v. Muir,* R.I., 432 A.2d 1173, 1175 (1981). The evidence introduced by the state established that Calitri had embezzled $87,437.84 in Urban League funds. In fact, the state presented evidence that some of the checks cashed by Calitri exceeded $500. Calitri did not dispute this point, nor did she present evidence that in any way suggested that a sum of less than $87,437.84 was embezzled from the Urban League.

The choice presented to the jury was simple. They could have believed the state's evidence that Calitri embezzled $87,437.84, or they could have disbelieved it. If the defendant was guilty of any crime, it was embezzlement of a sum in excess of $500. An instruction on a lesser included offense was not warranted.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court for further proceedings.