DECISION
This matter was before the Court to determine if a sanction should be imposed upon the defendant East Greenwich school committee[1] for a violation of the Open Meetings Law that had been found by Justice Melanie Famiglietti at earlier hearings in this case. On November 13, 1992, Judge Famiglietti declared that partial summary judgment should enter in favor of the plaintiff East Greenwich school teachers who had claimed that the members of the East Greenwich school committee violated provisions of the Open Meetings Law by failing to give the prescribed notice regarding a July 12, 1990 school committee meeting at which committee members discussed and voted upon the participation of East Greenwich in the Early Retirement Act (ERA) that had been passed by the General Assembly two weeks earlier. At the time she found the violation, and later by way of a supplemental decision rendered on April 16, 1993, Judge Famiglietti left open the question of a sanction to be imposed for the violation and ruled that an evidentiary hearing should be held on that issue. The Court conducted a hearing over three afternoons concluding on March 27, 1995 in order to receive evidence from the contending parties as to how the Court should exercise its discretion pursuant to R.I.G.L. § 42-46-8(d), which provides:
 (d) The court may issue injunctive relief and declare null and void any actions of a public body found to be in violation of this chapter. In addition, the court may impose a civil fine not exceeding one thousand dollars ($1,000) against a public body or any of its members found to have committed a willful violation of this chapter. The total fine imposed for any meeting held in violation of this chapter shall not exceed one thousand dollars ($1,000).
The positions of the parties are easily summarized. The plaintiff school teachers, who were all potential beneficiaries of the Early Retirement Act, urge the Court to void the school committee's resolution to have East Greenwich "opt out" of the Early Retirement Act because the July 12, 1990 meeting at which this official decision was made was convened in violation of the notice and advertising provisions of the Open Meetings Law. If the resolution adopted by the school committee during the offending meeting is declared void, then the plaintiffs will be in a position to take advantage of the Early Retirement Act.
The school committee argues that its violation of the Open Meetings Law was technical or de minimis and occurred because of time constraints, as the ERA required local governments who wished to opt out to do so within fourteen days of the law's enactment. Additionally, the school committee argues that there would be serious financial consequences to the town if the Court invalidates the July 12 resolution.
The Notice section of the Open Meetings Law provides, in pertinent part:
 (a) All public bodies shall given written notice of their regular scheduled meetings at the beginning of each calendar year. The notice shall include the dates, times, and places of the meetings.
 (b) Public bodies shall give supplemental written notice of any meeting within a minimum of forty-eight (48) hours before the date. This notice shall include, in addition to date, time, and place, a statement specifying the nature of the business to be discussed. Nothing contained herein shall prevent a public body, other than a school committee, from adding additional items to the agenda by majority vote of the members.
 (c) Written public notice shall include, but need not be limited to posting a copy of the notice at the principal office of the public body holding the meeting, or if no principal office exists, at the building in which the meeting is to be held, and in at least one other prominent place within the governmental unit; provided, that in the case of school committees, the required public notice shall be published in a newspaper of general circulation in the school district under the committee's jurisdiction. . . . (R.I.G.L. § 42-46-6)
It is clear from the language of the foregoing provision that the Legislature was especially concerned that the business of school committees be widely and properly advertised so that those persons affected by or interested in contemplated votes or resolutions could be in attendance. The statute does not indicate why school committees are held to higher standards than other governmental units, including town councils, but it is a matter of common knowledge that school committees regularly deal with a substantial portion of a community's budget,[2] and "[t]he operation of the public schools is one of the fundamental tasks of local, municipal government." Mellor v. Clancy,520 A.2d 1278, 1281 (R.I. 1987).
The remedies section of the statute does not set forward any criteria to be followed by a Superior Court justice regarding the clearly discretionary act of imposing a sanction for a violation of the statute. A discussion by the Rhode Island Supreme Court regarding the two types of judicial discretion provides some guidance as to how the trial justice should act:
 The first type [of discretion] accords to judges freedom of choice in areas unhampered by legal rules. A simple yet familiar example is a decision to recess court. Such a determination is unreviewable. The second class of judicial discretion also involves freedom of choice but the choices are limited, bounded by the law, and reviewable. Lord Coke has defined this category of discretion as `discernere per legem quid sit justum.' (`to see what would be just according to the laws in the premises'). 7 Coke, Institutes of the Laws of England, 41 (London, 1797). An abuse of this type of discretion occurs when a choice made is not within the discretionary area established by the law. State v. Tavarozzi, 446 A.2d 1048, 1051 (fn. 1) (R.I. 1982).
There is no doubt that R.I.G.L. § 42-46-8(d) permits a trial justice to "declare null and void any actions of a public body found to be in violation of this chapter"; but the inquiry begins at this point as to what factors should be considered to determine if this sanction is warranted.
The Supreme Court of Rhode Island has declared that the judicial "responsibility in interpreting a legislative enactment [is] to determine and effectuate what the Legislature intended,Berkshire Cable Vision of Rhode Island, Inc. v. Burke,488 A.2d 676, 679 (R.I. 1985), and to give a meaning `most consistent with its policies or obvious purposes.' City of Warwick v. Almacs,Inc., 442 A.2d 1265, 1272, (R.I. 1982)." Gryguc v. Bendick,510 A.2d 937, 939 (R.I. 1986).
The purpose of the Open Meetings Law is stated unequivocally in the act's first chapter:
 Public policy. — It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. R.I.G.L. § 42-46-1.
The Legislature was just as precise in expressing its desire to have the public widely informed about the open meetings legislation and remedies available to persons who believe they have encountered a violation by public officials:
 Notice of citizen's rights under this chapter. — The attorney general shall prepare a notice providing concise information explaining the requirements of this chapter and advising citizens of their rights to file complaints for violations of this chapter. The notice shall be posted in a prominent location in each city and town hall in the state. R.I.G.L. § 42-46-12.
It is against this legislative intent that both the actions of the school committee and the nature of a remedy must be measured.
The school committee members contend that their violation of the Open Meetings Law was technical and unintentional, and that the absence of bad faith on their part should lead the Court to let the July 12, 1990 resolution stand. It is obvious from the language of the statute that the Legislature did not consider the rules it was promulgating respecting open meetings and notice and advertisement about such meetings to be technicalities; rather, the Open Meetings Law is a lucid and deliberate formulation of at least some of the principal rules that control the operations of government in a free and democratic society. The meetings of local governments and agencies are required to be open so that interested citizens — and the press as well — may monitor the activities of elected and non-elected officials and then take action accordingly, be it by way of petition and remonstrance at the meeting itself, political organization and activism within the community, a lawsuit or the casting of a ballot in the next election. The statutory mandate that government meetings be open creates an environment that will attract many and disparate viewpoints, which presumably lead to a better informed decision making body. Moreover, meetings must be preceded by notice, for an open meeting about which the public is unaware may as well be closed or clandestine.
In a slightly different context, the Supreme Court of Rhode Island has stated "that when a statute mandates a hearing to which the public is invited and that which it is to be afforded the opportunity to be heard, the right to be heard implicitly carries with it `a reasonable hope of being heeded.'" L.A. RayRealty v. Town Council, 603 A.2d 311, 314, (R.I. 1992) (citingGoldengate Corp. v. Town of Narragansett, 116 R.I. 552, 562,359 A.2d 321, 326 (1976)).
The Open Meetings Law addresses openness and notice requirements but does not require public participation in every governmental meeting. As a matter of custom — and sometimes as a matter of statutory requirement — many meetings of local government bodies do include public hearings at which individuals may state their position to the public officials in a formal setting. In the instant matter, those few teachers who were informed by word of mouth about the July 12, 1990 school committee meeting were permitted to express their views. There was, of course, no notice of any sort that the meeting would, in fact, be a public hearing; and indeed, the overwhelming majority of affected persons as well as the public at large had no notice of any kind that the Early Retirement Act would be on the school committee's table for discussion.[3]
The defendants argue that because some of the teachers had received notice through their union vice president about the July 12 meeting and actually attended and made representations regarding their viewpoint to the school committee, their claims regarding defective notice under the Open Meetings Law are waived. This contention confounds and confuses the public policy of the Open Meetings Law with notice requirements that obtain in judicial or quasi-judicial proceedings. See, e.g., Gryguc v.Bendick, 510 A.2d 937 (R.I. 1986); Hirsch v. Zoning Board ofReview, 56 R.I. 463, 187 A. 844 (1936).
This Court rejects the contention of the school committee that the plaintiff teachers must demonstrate that the school committee was acting in bad faith before the sanction of voiding the resolution may be imposed. See, e.g., Rozecki v. Gaughan,459 F.2d 6, 8 (1st Cir. 1972). The statutory mandates regarding the publication of notice is clear, and thus protestations about an absence of bad faith or intentional wrongdoing by defendant government officials are of no avail. On the other hand, this Court, in considering a remedy as opposed to determining whether a statutory violation has occurred, must examine whether there was a good faith attempt on the part of the school committee to comply with the statutory requirements. The evidence produced at the hearing shows that there was not.
School Committee Chairman Robert Holbrook and Superintendent of Schools David Connelly testified that they followed the progress of the Early Retirement Act through the Legislature in the spring of 1990 by reading the popular media as well as professional association newsletters. At some time prior to the enactment of the statute on June 30, 1990, both Mr. Holbrook and Mr. Connelly had reached the conclusion that the law would not provide any benefits to East Greenwich and would in fact cause financial problems. When the law was passed containing a provision that school committees wishing not to participate had fourteen days from the date of enactment to "opt out," Mr. Holbrook and Mr. Connelly made it their business to see to it that East Greenwich would follow the course of action they believed was the wisest.[4]
It is undisputed that July 12, 1990 was a Thursday and at this meeting of the school committee a resolution was passed to opt out of the Early Retirement Act. It is also undisputed that this meeting was not advertised as required by R.I.G.L. §42-46-6(b) and (c), thus leading to Judge Famiglietti's earlier decision that there had been a violation of the Open Meetings Law. No newspaper notice as required by R.I.G.L. § 42-46-6(c) was ever published forty-eight (48) hours in advance of the July 12 meeting; and Mr. Holbrook and the school department employee providing secretarial services to the superintendent and the school committee, Virginia Giuliani, testified that no notice making specific reference to the topic of early retirement was ever typed and posted in any public building in East Greenwich.
The reasons stated by Mr. Holbrook and Mr. Connelly for the failure to give the statutorily required notice was that the "window" of time, meaning fourteen days, was too short given the advance delivery required by the East Greenwich Pendulum
respecting legal advertisements. The defendant officials contend that they had to wait until they met with the town council on July 9 before scheduling their own meeting for July 12; and as the Pendulum, according to Mr. Connelly, had a deadline of the Friday preceding Wednesday publication for the placement of ads, the time-frame made newspaper publication of notice an absolute impossibility.
The testimony of Frederick Wilson, the publisher of the EastGreenwich Pendulum for the past eleven years, contradicts Mr. Connelly's assumption. Mr. Wilson testified that the standard procedure at the Pendulum for accepting advertisements was a Friday deadline for copy that was to appear in the following Wednesday's edition. Mr. Wilson explained that his paper was capable of accommodating ads beyond that deadline if requested. He said that ads could be placed Monday afternoon or, in some cases, as late as the Tuesday morning prior to the Wednesday edition, so long as the new or amended copy was delivered to thePendulum office before the paper was sent to a printer in Connecticut for production of the Wednesday paper. Mr. Connelly testified that he made no effort to contact the Pendulum to determine if it would be possible to submit an advertisement, nor did he or anyone else contact the Providence Journal relative to publishing a legal notice.
When the ERA became law on June 30, 1990, the school committee had fourteen days in which to advise the Department of Administration if it was going to "opt out" of the program, but the school committee shortened the time to three days when it delayed until July 9, 1990 to schedule a discussion and vote on the ERA for the July 12 meeting. The July 12 meeting had been previously scheduled as a "workshop," and on June 30, or at least by the first or second of July, Mr. Holbrook and Mr. Connelly knew that to have their position of non-participation in the Early Retirement Act discussed and voted upon a formal meeting would be necessary. While it may have been both courteous and politically intelligent for the school committee to discuss their views with the town council, which also had to make an ERA decision relative to other municipal employees, the ultimate decision respecting school teachers had to be made by the school committee. Mr. Connelly testified to this; and the law regarding the autonomy of school committees in such matters is well-established. See, e.g., Dawson v. Clark, 93 R.I. 457, 460, 176 A.2d 732, 734 (R.I. 1962).
The school committee could have placed an advertisement in the July 4, 1990 Pendulum indicating that discussion of the ERA would be on the July 12 agenda, had the committee or one of its agents taken the time to call that newspaper. The advertising columns in the Providence Journal were also available to the school committee, but no attempt was made to use these.
The defendants, through Superintendent Connelly, also advanced the position that the committee had an obligation to meet regarding the Early Retirement Act only if the East Greenwich school system was going to "opt out" of the program. In answer to questions from the Court, Mr. Connelly said he did not believe it would be necessary for the school committee to meet if the East Greenwich school system was to permit its teachers to take advantage of the legislation. This view is further indication by the East Greenwich defendants of their disregard of the commands of the Open Meetings Law. As it was clear that an official decision would have to be made one way or the other by the school committee as to what its position would be vis-a-vis the new legislation, an open and public meeting was necessary. Even if the committee had wished to "opt in," it would have had to meet in public to decide this. Equitable considerations cannot relieve the school committee of a mistaken notion about the requirements of the Open Meetings Law, for as our Supreme Court has long taught, "Equity must follow the law. . . .," Cannon v.Beatty, 19 R.I. 524, 526 (1896) (citing 1 Story, Eq. Jur.,
Sec. 177).
In addressing another issue, the Rhode Island Supreme Court has described "good faith":
 ". . . `good faith' connotes something more than the affirmative absence of fraud. It presupposes a reasonably diligent effort to obtain service on the insured. . ." Collier v. Travelers Insurance, 97 R.I. 315, 321, 197 A.2d 493, 496 (R.I. 1964); See also, Goodman v. Turner, 512 A.2d 861, 865 (R.I. 1986).
In the instant matter, the notice involved is of a different type than the personal service discussed in Collier, but the question presented is similar. Did the East Greenwich school officials make a "reasonably diligent effort" to comply with the mandate of the Open Meetings Law? The simple answer is that they made no effort at all.
In addition to their contentions about the burdens of the time deadline, the school committee advances the argument that a voiding of the resolution by this Court will create serious financial problems for the school budget. The Court permitted testimony on this matter, albeit with a stated reservation that the financial impact of a ruling may not be germane to the Court's exercise of discretion. Testimony about financial concerns came primarily from Mr. Holbrook who said that over a period of time the Town of East Greenwich would incur expenses that would not be offset by any benefits to be gained by having some senior teachers retire early.
The Court finds, based on Mr. Holbrook's testimony, that under any set of circumstances the financial impact of voiding the ordinance would be minimal, and certainly would not be calamitous for the school budget or the taxpayers. To extrapolate from Mr. Holbrook's testimony, if ten teachers making an average of $40,000 per year were to retire and be replaced by ten teachers somewhere in the middle of the pay scale, or $28,000 per year, the obvious net savings to East Greenwich would be $120,000. This would be offset by the additional premium payments into the pension fund required of East Greenwich for participation in the plan, somewhere between one and two percent of the school budget in addition to the normal premium. With a school budget in the vicinity of seven or eight million dollars, at least as of 1990, Mr. Holbrook estimated the additional premium would be in the $70,000 to $80,000 range. With the salary figures yielding a surplus of $120,000 in the scenario just recited, the benefit to East Greenwich would be around $50,000. However, Mr. Holbrook asserted that over a period of time, as the new hirees advance up the salary ladder, there would be a decreasing benefit and ultimately a loss to the town.
What Mr. Holbrook did not discuss, nor could he or anyone else fairly predict, was the attrition with the passage of time of other teachers through retirement or moves to other school systems or careers, as well as additional replacement teachers sometimes being hired at steps beneath the middle of the salary ladder.
In any event, I do not believe that a trial justice called upon to determine a sanction for an Open Meetings Law violation must scrutinize, analyze and ultimately resolve the merits of the legislation passed at the improperly convened meeting. The Court in such circumstances should apply the law to effectuate the objective of the Legislature in enacting the statute, regardless of the fiscal arguments pro and con regarding the impact of voiding a resolution or ordinance. This is hardly a unique concept.
When the United States Supreme Court declared that "separate educational facilities are inherently unequal," Brown v. Boardof Education, (I) 347 U.S. 483, 495 (1954) it unleashed a tide of court rulings that had financial impacts on school districts far in excess of any problems that could be engendered by early retirement legislation; but the financial problems of local school districts never deterred the Supreme Court from acting in a way that had a serious and significant impact on "the physical condition of the school plant, the school transportation, personnel, revision of school districts and attendance. . ."Brown v. Board of Education, (II) 349 U.S. 294, 300-301 (1954). In similar fashion, the United States District Court for the District of Rhode Island rejected financial objections raised by state officials when it issued orders designed to eliminate unconstitutional conditions at the Adult Correctional Institutions: ". . . it is clear beyond doubt that inadequate funding is no answer to the existence of unconstitutional conditions in state penal institutions." Palmigiano v. Garrahy,443 F. Supp. 956, 985 (D.R.I. 1977).
In Brown v. Board of Education and Palmigiano v. Garrahy,
the unconstitutional practices of state officials were involved. In the instant matter, the plaintiffs for the purposes of the specific question under review have not raised any constitutional challenges, but in the opinion of this Court, similar considerations apply relative to defendants' fiscal impact argument. The core purpose of the Open Meetings Law is to advance the objective of a free and open democracy so that citizens will be able to attend, and in appropriate circumstances, participate in debates that affect interests that very often enjoy constitutional protection.
In this case, the school committee and the school superintendent knew, or should have known, that they would have to convene and discuss the participation or non-participation of East Greenwich in the Early Retirement Act program, and they knew this during the first two days of July 1990. They did absolutely nothing to try to comply with the notice mandates of the Open Meetings Law. The only appropriate sanction to protect the interests of the public and the individuals directly affected by the actions of the school committee is to void the resolution "opting out" of the Retirement Act on July 12, 1990 and the letter originating from the school committee and delivered to the Director of Administration respecting that resolution on July 13, 1990.
Government officials have no choice as to when they will follow the strictures of the Open Meetings Law. Moreover, the argument by the school committee that fiscal impact should be factored in to this Court's decision relative to sanctions is based on an unarticulated premise that maintains, in effect, that the more fiscally substantial the impact of legislation enacted at a meeting conducted in violation of the Open Meetings Law, the less stringent the judicially imposed sanction should be. To put it another way, the sanction should be in inverse proportion to the magnitude of the ordinance enacted at the offending meeting. The reply to this argument is, "No court will ever impute to the Legislature an intent to enact statutes devoid of logic or reason or one that achieves unreasonable consequences." Davis v. Wood,427 A.2d 332, 336 (R.I. 1981).
This Court would fail in its duty to effectuate the legislative determination to establish appropriate sanctions for governmental violations of democratic processes if it did not void the July 12 resolution, as there has been no showing that a good faith attempt to implement the provisions of the Open Meetings Law somehow failed because of circumstances beyond the control of the defendants.
 "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . If the government becomes a law breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. . . ." Miranda v. Arizona, 384 U.S. 436, 479-480 (1966), (citing Olmstead v. United States, 277 U.S. 438, 485 (1928) (dissenting opinion of Mr. Justice Brandeis)).
Here, the East Greenwich school officials interfered with the right of interested persons and the people at large to receive a statutorily mandated notice regarding school committee business. As one constitutional scholar has written:
 Governmental interference with the . . . right to speak calls for active judicial protection of the background conditions for political deliberation, political equality and citizenship. The point suggests that our interpretive principles ought to be especially attuned to harmful effects on the system of free expression and on political participation and representation. In these cases, courts should not adopt the normal attitude of deference to legislative processes. Cass R. Sunstein, The Partial Constitution, pp. 142-143 (1993).
Unlike Professor Sunstein's example of a legislative enactment curtailing freedom of expression or participation in government, we are confronted in this case with a state statute which has as its objective the inclusion of as many persons as possible in the deliberative processes[5] of government, but the principles of judicial scrutiny remain the same. It is the Court's responsibility to ensure that the reasonable expectations of the people to receive appropriate notice of the business and agendas of their elected officials are protected.
The East Greenwich school committee members have the dual obligations of thoughtfully considering educational issues brought to their attention and of ensuring that their discussions and deliberations are conducted in conformity with constitutional and statutory procedures. Regarding the Open Meetings Law, in the first instance, elected officials are obliged to implement that law for the protection of the citizens at large; additionally, the law provides aggrieved citizens with remedies, one of which is to have the business of an official body conducted at an improperly convened meeting declared a nullity by the Superior Court. This is a remedy entrusted to the discretion of the Court, and the availability of this established sanction should not come as a surprise to the school committee members.
For the foregoing reasons, the Court, as a remedy for the Open Meetings Law violations earlier found by Justice Famiglietti, declares null and void the resolution of the July 12, 1990 school committee meeting relative to the committee's decision to "opt out" of the Early Retirement Act, and also declares null and void all actions taken by the committee pursuant to that resolution. As partial summary judgment was entered earlier in this matter in favor of the plaintiffs, plaintiffs' counsel shall submit an amended judgment that incorporates into it the decision of the Court respecting this remedy.
[1] Though the State of Rhode Island is denominated in the caption of this case as a party defendant, the issue of sanctions did not involve the State of Rhode Island but only the East Greenwich School Committee.
[2] Uncontradicted evidence of the defendant school committee showed this to be the case in East Greenwich where approximately $8 millions dollars of a $17 million dollar municipal budget was spent on schools.
[3] As discussed below, it is not the Court's role to evaluate the merits of the contending views regarding participation under the ERA. The Court does note, however, that the absence of notice necessarily prevented many opinions from being heard. For example, a respected educational commentator has discussed the problem — apart from financial concerns — of an excess of teachers with longevity: "Weary and uninspired tenured teachers can drag a school down, and with no new blood there are few opportunities for the challenge and criticism that used to be voiced by uncompromising and optimistic novice teachers." Sara Lawrence Lightfoot, The Good High School: Portraits of Characterand Culture, p. 335 (1984). This observation may be countered by those who maintain that wisdom comes with time. Whatever the resolution of this point may be, it and others were never raised because of the failure to give notice. At best, the absence of notice to the public shrinks the parameters of discussion, and at worst, government officials can advance their agendas free from public scrutiny.
[4] Mr. Connelly, when recalled to the stand by the teachers to testify during the presentation of their case, indicated that on June 29, 1990, he had received a communication from Donald R. Hickey, the Executive Director of the Employees Retirement System advising that school committees would have fourteen days from the passage of the Employees Retirement Act to pass a resolution and communicate it to the Director of Administration if they wished to "opt out."
[5] Words of Justice Felix Frankfurter in reviewing the rights of an accused are just as appropriately applied to the legislative process: "The history of American freedom is, in no small measure, the history of procedure." Malinski v. New York,324 U.S. 401, 414 (1945) (Frankfurter, J. concurring).